**NEWTOWN SQUARE EAST, L.P., Appellant**

v.

**TOWNSHIP OF NEWTOWN.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.
Decided Dec. 29, 2011.

See also 2011 WL 6840574

Arlen Specter, Philadelphia, John W. Nilon, Jr., Media, and Nancy L. Winkelman, Philadelphia, for appellant.

Richard C. Sokorai, Norristown, and John M. Forde, Philadelphia, for appellee Township of Newtown.

Marc B. Kaplin, Blue Bell, for intervenor BPG Real Estate Investors.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Newtown Square East, L.P. (NSE), appeals from two orders of the Court of Common Pleas of Delaware County (trial court). One of the orders from which NSE appeals is the trial court's June 24, 2010 order, which denied NSE's land use appeal and affirmed the order of the Newtown Township Board of Supervisors (Board), approving a planned residential development (PRD) Tentative Plan Application (Tentative Plan) submitted to the Board by intervenor BPG Real Estate Investors—Straw Party I, L.P.

(BPG).[1] The other order from which NSE appeals is the trial court's June 22, 2010 order, denying NSE's motion to consolidate this appeal with another appeal that NSE filed involving a decision of the Newtown Township Zoning Hearing Board (ZHB) in which NSE asserted that the Township's 2009 Planned Residential Development Ordinance (PRD Ordinance) is not valid. For the reasons that follow, we affirm the trial court's orders.

## I. BACKGROUND

NSE does not challenge any specific factual findings of the Board. Consequently, we will summarize below the key procedural and substantive facts based upon the Board's findings. BPG owns a tract of land approximately 218.664 acres in size. Under the PRD Ordinance, the tract is located within the PRD Overlay District. The tract already has some improvements, including: (1) nearly one million square feet of office space and industrial buildings; (2) six historic cottages that are used for office and accessory purposes; (3) a conference center; (4) a fitness center; and (5) and three-story medical office building.

On January 22, 2009, BPG submitted to the Board a Tentative Plan, proposing to develop another area of the tract as a mixed-use development. The Tentative Plan included plan documents and information required by the PRD Ordinance.[2] The Township's Engineering firm, Pennoni Associates, Inc. (Pennoni), reviewed the Tentative Plan and issued two comment letters to BPG in May and June 2009. On

May 14 and June 11, 2009, the Township's Planning Commission reviewed the Tentative Plan and approved it subject to BPG's compliance with the comments Pennoni made regarding the Tentative Plan, the adoption of the 2009 PRD Ordinance, compliance with traffic improvements reflected in the "Settlement Agreement," delineation of public and private open space, and revision of oversized parking space locations.

The Board held hearings on the Tentative Plan on September 14 and October 7, 2009, during which BPG submitted various exhibits setting forth required details of the proposed mixed-use development. The proposed development included the following: (1) an area identified as Sector 1 containing "a maximum of 464,560 square feet of [c]ommercial/retail/restaurant space, 136,415 square feet of office space, 310 residential units with no more than 480,000 square feet of floor area, a 120,000 square foot hotel, and an additional 100,000 square feet of flexible space that may be devoted to office and/or hotel use in the mixed use area of the Tract . . . ;" (2) an area identified as Sector 2 containing "a total of 400,000 square feet of office space in two buildings (including the existing medical office building) on the Front Lawn portion of the Tract;" and (3) an area identified as Section 3 containing "98 residential units within the area adjacent to Route 252 and Goshen Road." (Board Decision, Finding of Fact (F.F.) No. 16.)

The Board, after consideration of the evidence, determined as follows:

> NSE has not objected to this aspect of the process, and we are unaware of any prohibition against a municipality engaging in pre-public hearing initial review of a Tentative Plan based upon the anticipated enactment of an ordinance.

1. NSE participated in the proceedings before the Board based upon its ownership of property adjoining BPG's property.

2. Although BPG submitted the Tentative Plan in January 2009, the Township did not enact the 2009 PRD Ordinance until July 13, 2009. Such an approach seems unorthodox, but

As set forth in the evidence ... the Proposed Development is consistent with both the objectives of the PRD Ordinance and the Township's Comprehensive Plan and reflects the Township's vision for growth in the Newtown Square crossroads area contained therein. Specifically:

A. The Proposed Development provides opportunities for new residential development for the general populace in the Newtown Square crossroads area to meet the growing demand for a variety of residential dwellings;

B. The Proposed Development provides integrated retail, office, community, open space and residential uses in the Newtown Square crossroads area;

C. The Proposed Development includes mixed-use, multi-story buildings, with retail shops at ground level, and offices and apartments above;

D. The Proposed Development includes residential uses within walking distance of community uses and commercial services;

E. The Proposed Development includes pedestrian-oriented buildings, directly accessible from small streets or from a walkable system;

F. The Proposed Development includes pedestrian-oriented lighting, benches and landscaping;

G. The Proposed Development includes off-street parking lots and parking structures;

H. The Proposed Development includes cartways of moderate width.

(*Id.*, F.F. No. 21.) The Board concluded that BPG's property met the eligibility requirements for a PRD set forth in Section 301 of the PRD Ordinance, and that the proposal satisfied the purpose, intent, and development standards of the PRD Ordinance. Further, the Board concluded that the Tentative Plan's development schedule was reasonable and in the public interest and imposed conditions, described below, that the Board deemed necessary to protect and further the public interest.

The Board imposed maximum density and intensity limitations with regard to the three separate "Sectors" in the Tentative Plan. With regard to Sector 1, the Board approved up to 464,560 square feet for commercial/retail/restaurant uses, 136,415 square feet for office uses, 310 residential units with a maximum of 480,000 square feet of floor area, 120,000 square feet for hotel uses, and "[u]p to an additional 100,-000 square feet of flexible space that may be devoted to office and/or hotel use." (Board Decision at 11.) Also, the Board noted that although the cottages in Sector 1 are not included in the maximum space allotment, if BPG were to change the use of the cottages to commercial/retail/restaurant, or expand floor space in any of the cottages, the space would count toward the maximum space allotted for commercial/retail/restaurant uses. Further with regard to Sector 1, the Board stated that although it did not count the area of an existing fitness center toward the maximum area allotted for commercial/retail/restaurant use, if BPG added to the area of the fitness center, that additional space would be counted toward the maximum allotment of space for commercial/retail/restaurant uses. (*Id.*)

As to Sector 2, the Board imposed the following condition: "Within the area west of the Loop Road and within 1000 feet of the West Chester Pike, there shall be no more than 400,000 square feet of total office square footage in no more than two buildings, exclusive of parking structures." (*Id.*) Finally, with regard to limitations on allotment of space in Sector 3, the Board imposed the following condition: "Within

the area adjacent to Route 252 and Goshen Road proposed for residential development, there will be no more than 100 residential dwelling units consisting of single family detached dwellings, two family dwellings, single family semi-detached dwellings (twins) and/or townhouses, and no others, provided that there are no more than 410 residential units on the Tract as a whole." (Board Decision at 12.)

NSE appealed to the trial court, ultimately asserting that (1) the Tentative Plan fails to comply with requirements of the Pennsylvania Municipalities Planning Code (MPC)[3] relating to the designation of uses and proposed uses of buildings and structures on a Tentative Plan; (2) the Board's approval of the Tentative Plan violates the MPC by permitting the Plan to be "freely modified prior to the submission of a Final Plan;" (3) the Tentative Plan, as approved by the Board, violates the requirements of Article VII of the MPC[4] and deprives NSE and other potentially interested property owners of "safeguards which should accompany the Tentative Plan approval;" (4) the Tentative Plan impermissibly permits the "floating" of commercial uses in violation of Pennsylvania Supreme Court precedent; and (5) the Tentative Plan is inconsistent with requirements of the PRD Ordinance including (a) the alleged failure of the Tentative Plan to comply with Section 402.H.1 of the PRD Ordinance, which relates to the designation and location of intended uses of all portions of a proposed development, (b) the alleged failure of the Tentative Plan to designate uses permitted by Section 302 of the PRD Ordinance, and (c) the identification of uses as "commercial" in the Tentative Plan, which, NSE asserted, is a term

that the PRD Ordinance does not identify as a permitted use.

NSE also filed a challenge with the Township's Zoning Hearing Board (ZHB), claiming that the PRD Ordinance is invalid. In that proceeding, the ZHB rejected NSE's validity challenge. NSE appealed that decision to the trial court, which affirmed the ZHB, and NSE appealed that decision to this Court as well. The Court addressed that appeal and NSE's appeal of a related order in *Newtown Square East, L.P. v. National Realty Corporation*, 38 A.3d 1018 (Pa.Cmwlth.2011) (*Newtown Square I* or validity challenge appeal). In *Newtown Square I*, as well as in this case, NSE also filed a motion to consolidate its appeal in this case of the Board's approval of the Tentative Plan with its appeal in *Newtown Square I*. As indicated above, the trial court in this case (as well as in the trial court in *Newtown Square I*) denied NSE's motion to consolidate the two appeals, based upon its conclusion that the two matters did not involve common questions of law or fact. The trial court, after receiving additional evidence, also denied a petition BPG filed seeking an order directing the posting of a bond by NSE.

With regard to the merits of NSE's appeal of the Board's approval of the Tentative Plan, the trial court affirmed the Board, concluding that (1) the Tentative Plan complied with all requirements of the PRD Ordinance, and (2) NSE's claims that the PRD Ordinance is inconsistent with the MPC were not within the scope of the appeal, but rather were the subject matter of NSE's validity challenge before the ZHB.

 On appeal to this Court,[5] NSE raises the following issues: (1) whether the

---

3. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

4. Sections 701–713 of the MPC, *as amended*, 53 P.S. §§ 10701–10713.

5. Generally, when a trial court takes additional evidence on the merits, we review the trial

trial court erred in concluding that the Tentative Plan complied with all of the requirements of the PRD Ordinance and/or the MPC where the Tentative Plan (a) does not designate specific proposed uses of buildings in the Tentative Plan and (b) includes uses that are not defined or specifically permitted under the PRD Ordinance; (2) whether the trial court erred in affirming the Board's decision when the Board's approval included a condition that BPG make off-site road improvements valued at up to $8.6 million; and (3) whether the trial court abused its discretion in de-

nying NSE's motion to consolidate this appeal with its appeal of the ZHB's decision upholding the substantive validity of the PRD Ordinance. For the reasons that follow, we affirm the trial court's orders.[6]

## II. ANALYSIS

### A. Compliance of the Tentative Plan with the PRD Ordinance and/or the MPC

NSE argues that the Tentative Plan fails to comply with the PRD Ordinance

court's factual findings and legal conclusions for errors of law or abuses of discretion. *Borough of Jenkintown v. Bd. of Comm'rs of Abington Twp.*, 858 A.2d 136, 138 (Pa.Cmwlth. 2004) (*Jenkintown*). In this case, the parties appear to agree that, once the trial court accepted additional evidence in the course of the bond hearing, the trial court's standard of review of the case was de novo. We have held that when a trial court takes additional evidence in a land use appeal, a trial court should exercise its de novo review and issue its own factual findings and legal conclusions. *Id.* (citing *LHT Assoc., LLC v. Twp. of Hampton*, 809 A.2d 1072 (Pa.Cmwlth.2002)). This rule applies even if a trial court accepts only minor evidence relating to the merits at a bond hearing. *Id.* (citing *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819 (Pa.Cmwlth.2003)). In this case, the trial court did not issue any factual findings. This Court has stated:

Generally, if the trial court, after taking additional evidence on the merits, has failed to make its own de novo review, we must remand to the trial court. However, even in cases where a trial court has accepted additional evidence on the merits, and nevertheless improperly proceeds to exercise pure appellate review rather than de novo review, we may review the trial court's decision when the record presents 'uncontradicted facts?' permitting our review and rendering a remand unnecessary. *Rayel v. Bridgeton Township Zoning Hearing Board*, 98 Pa.Cmwlth. 455, 511 A.2d 933 (1986) (where undisputed facts showed no abandonment Court could review for error of law).

*Id.* at 138–39. Thus, although the issue of the appropriate standard of review is not one that parties may agree to waive, *id.* at 138, in this case, we believe that NSE has asked us only to review the legal conclusions of the trial court. Consequently, we do not need to remand the matter to the trial court.

With regard to our review of the trial court's denial of NSE's motion to consolidate, we are limited to considering whether the trial court abused its discretion. *See Com. v. Gibbons*, 379 Pa.Super. 285, 549 A.2d 1296, 1299 (1988). Although *Gibbons* involved consolidation in the context of criminal charges, we believe the same standard is applicable to proceedings involving land use appeals.

6. Before beginning our discussion of the merits of the appeal, we note the following information concerning the record before the trial court. The trial court's docket does not indicate that it ever received or directed the Board to forward to the trial court the record created before the Board. Instead, during the course of the trial court's hearing on BPG's bond petition, the parties submitted certain documents. One of the documents submitted to the trial court was the transcript from the Board's first hearing on October 7, 2009, but neither party appears to have offered the transcript from the Board's second hearing. NSE's inclusion of that transcript in the Reproduced Record appears to conflict with the rules regarding the contents of a reproduced record, specifically Pennsylvania Rule of Appellate Procedure 2152(a), which limits the contents of a reproduced record to "parts of the record." Nevertheless, we did not rely upon that portion of the Reproduced Record for our analysis.

and/or the MPC, because the Tentative Plan does not designate a *specific* use for each of the buildings identified in the Tentative Plan, but rather identifies either different potential uses or a category of uses for a given building included in the Tentative Plan. Further, NSE argues that the Tentative Plan identifies "commercial" uses for some of the proposed buildings, which NSE faults, arguing that the PRD Ordinance neither defines nor references that term. On this basis, NSE characterizes the Tentative Plan as merely a "conceptual" plan, and NSE argues that those alleged deficiencies render the Tentative Plan invalid.[7]

*1. Whether the Lack of Identification of Specific Uses for Buildings Renders the Tentative Plan Invalid Under the PRD Ordinance and/or the MPC?*

Section 402.4 of the PRD Ordinance provides, in pertinent part, as follows:

> Tentative Plan Requirements ... The intent of the Tentative Plan submission requirements is to provide schematic design and planning information specifically required by Section 707(4) of the [MPC] without mandating detailed site engineering, architecture or landscape architecture which shall be required in the Final Plan submission. ...
>
> The Tentative Plan shall include:

. . .

H. A Proposed Overall Development Plan including:

. . .

(1) A designation and location of the intended uses of all portions of the proposed development.

. . .

(7) The approximate height, bulk and location of buildings and other structures. It is specifically recognized that the locations and configurations of buildings shown on the Overall Development Plan may change between Tentative Plan approval and Final Plan approval.

NSE presents two arguments regarding the Tentative Plan's failure to identify specific uses for each building or structure:[8] (1) the trial court erred in its interpretation of the PRD Ordinance, and (2) if the trial court's interpretation of the PRD Ordinance is not erroneous, the PRD Ordinance violates Section 707 of the MPC, 53 P.S. § 10707. With regard to the latter argument, as noted above, in the companion case of *Newtown Square I,* we concluded that the PRD Ordinance does not conflict with the use-designation provision of the MPC. Further, in the validity challenge appeal, we concluded that (1) Section

7. NSE further describes the alleged inadequacies to include the following: (1) the Tentative Plan does not identify a specific use for twenty-seven of thirty buildings; (2) the Tentative Plan contains up to 464,560 square feet of building space identified as "commercial/retail/restaurant/entertainment;" and (3) the Tentative Plan contains up to 100,000 square feet of space that could be used for combinations of offices and/or hotels.

8. BPG asserts that NSE never raised this issue in its second amended notice of appeal; however, paragraphs 31–32, and 35 of the second amended notice of appeal appear to raise the question of whether the Tentative Plan fails to satisfy the use-identification requirements of the PRD Ordinance. For the reasons expressed in our decision affirming the order of the trial court in the companion matter involving NSE's challenge to the validity of the PRD Ordinance (*Newtown Square I*), however, we need not address NSE's continued claims asserting that the Tentative Plan does not comply with the MPC. As we concluded in that appeal, the PRD Ordinance complies with the requirements of the MPC with regard to the identification of uses in a tentative plan. Thus, our sole inquiry in this case is whether *the PRD Ordinance* requires a developer to identify *specific* uses of each building and/or location in a tentative plan.

707 of the MPC does not require a designation of a specific use in a tentative plan, and (2) a PRD ordinance that, by application or on its face, does not require the identification of a specific use is not invalid under the MPC.

2. *Whether the Board Erred in Approving the Tentative Plan Because the Plan Identifies Some Buildings to be Used for Commercial Purposes?*[9]

■ NSE asserts that the Board erred in approving the Tentative Plan, because the Tentative Plan identifies the use of some of the buildings as "commercial." NSE contends that the Tentative Plan thereby fails to comply with the PRD Ordinance, because the PRD Ordinance does not reference, define, or specifically permit, such a use.

NSE, relying upon this Court's decision in *Kang v. Supervisors of Township of Spring*, 776 A.2d 324 (Pa.Cmwlth.2001), first argues that "[p]arties affected by a proposed development are entitled to rely on the specific permitted uses identified in a PRD Ordinance." (NSE's Brief at 23.) *Kang* involved a challenge brought by objecting landowners to the grant of a conditional use permit to a developer of a planned residential development that authorized the developer to construct a hotel with a restaurant as an accessory use. This Court reversed the governing body's grant of a conditional use because, the Court concluded, the governing body's action effectively amended the PRD plan through a subsequent application for a conditional

use. The Court identified the issue in the case as whether the governing body "erred in determining that the former zoning classification of the parcel was still applicable thereby allowing the developer to circumvent the PRD Ordinance via a conditional use application based on the former zoning designation." *Id.* at 327.

In *Kang*, this Court referenced Section 711(d) of the MPC, 53 P.S. § 10711(d), which provides that when a PRD development plan is filed, the zoning and land development ordinances that would otherwise be applicable to the property comprising the PRD cease to apply. *Alta Vita Condo. Ass'n v. Zoning Hearing Bd. of the Twp. of Hempfield,* 736 A.2d 724, 728 (Pa. Cmwlth.1999), *appeal denied,* 563 Pa. 620, 757 A.2d 935 (2000). Because, however, this appeal does not involve a situation in which a party seeks to apply a zoning ordinance or subdivision and land development ordinance to a PRD that has been finally approved, we conclude that *Kang* is not applicable to or supportive of NSE's argument.

NSE also argues that the Board's approval of "commercial" uses leaves too much flexibility in the hands of BPG with regard to the ultimate uses of the property, because neither the PRD Ordinance nor the Township's subdivision and land development or zoning ordinances defines that term. NSE asserts that, even though the term "commercial" may encompasses categorically many of the uses that the PRD Ordinance permits as of right, the

---

9. Initially we note that although NSE did raise the use-identification issue during the Board's hearings, we have located no place in the record where NSE raised this issue before the Board. The Rules of Appellate Procedure direct parties to identify the place in the record where they raised an issue, but NSE has not done so. Pa. R.A.P. 2119. If NSE had raised the issue before the Board, the Board could have addressed the issue and engaged in interpretation of the PRD Ordinance. By failing to do so, NSE precluded the Board from offering its perspective on the meaning of the PRD Ordinance, and, thereby, prevented the trial court and this Court from gaining the guidance of the governmental body that has the primary role in interpreting the PRD Ordinance. Thus, we could conclude that NSE has waived the issue, but we will nevertheless proceed to address the issue.

Board erred in concluding that the Tentative Plan is valid. NSE suggests that permitting a categorical use identification at the tentative plan stage of the PRD approval process could enable BPG ultimately to install uses that are "commercial" in the generic sense but not permitted as of right under the PRD Ordinance. In other words, NSE fears that once the Board approved "commercial" uses, neither the Township nor interested parties will be able later to object to a use that is not specifically permitted. NSE also suggests that, once the Board approved the Tentative Plan, the Board could proceed to the final plan approval stage, and BPG would become entitled to approval without conducting a public hearing on the question of whether the proposed uses are permitted under the PRD Ordinance.

We believe our discussion in NSE's validity challenge appeal adequately addresses all of NSE's concerns regarding BPG's identification of proposed uses as "commercial." As we indicated in the validity challenge appeal, we can presume that, when the Board approves a Tentative Plan and a developer uses the term "commercial" to identify a particular use of a building, the Board is limiting its approval to commercial uses that are permitted as of right. On the other hand, if BPG were to include a use that is not permitted under the PRD Ordinance, any final plan would be non-compliant with the approval the Board granted, and the Board would be required to conduct a hearing on the proposed final plan. If the Board failed to do so, an interested party would have the power to seek review of both the Board's decision to approve the final plan and the decision not to conduct a public hearing on the final plan.

Moreover, contrary to NSE's contention that the PRD Ordinance contains an isolated reference to the term "commercial," our cursory review of the PRD Ordinance reveals numerous references to "commercial" uses, including the statement of legislative findings of the PRD Ordinance in Section 103 of the PRD Ordinance. Additionally, Section 303 of the PRD Ordinance, which relates to "Area and Dimensional Regulations" includes the following references to commercial uses: "For retail stores, banks, restaurants, *and other commercial buildings*, there shall be four and one-half (4.5) parking spaces for every one thousand (1000) square feet of gross floor area." Section 303(E)(4) of the PRD Ordinance. These provisions demonstrate the drafters? intent to include nonresidential permitted uses as of right when they referred to "commercial" activities and uses in the PRD Ordinance.

Thus, we have no difficulty concluding that, when read together, the provisions of the PRD Ordinance permit the identification of uses by the categorical designation "commercial" with the understanding that the approval the Board renders under such circumstances is limited to uses permitted as of right. Consequently, the Board's approval is limited by the terms of the PRD Ordinance, and a developer could not, for example, install a light industrial business (which could be considered commercial in the sense that such uses are generally for-profit).

In summary, the provisions of the PRD Ordinance make several matters clear. First, although the PRD Ordinance does not specifically define the term "commercial," the drafters of the PRD Ordinance intended to permit, and, in fact, intended to encourage "commercial" uses within PRDs. Second, the drafters included as permitted uses in addition to "retail" establishments and restaurants within PRDs a wide array of uses that are profit-making endeavors and thus fall within the dictionary definition of the term "commercial."

Thus, the Board did not err in approving the Tentative Plan where BPG identified uses as "commercial." If BPG's final plan were to identify a use that is "commercial" but the ultimate use proposed is one that reaches beyond the scope of the uses Section 302 of the PRD Ordinance permits as of right, the plan would be non-compliant with the Tentative Plan and the Board would be required to conduct a public hearing on the final plan submission. In such a hearing, an appropriate objector would have the right to assert claims challenging the approval of such uses. As a matter of observation, we also note that objectors would not be bound by the Board's conclusion that a final plan is compliant with the Tentative Plan. In a circumstance where a final plan deviates from an approved tentative plan, but a Board does not view the final plan as being non-compliant, an objector could challenge such a decision and thereby also challenge changes to the tentative plan that an objector may view as so substantial as to make a public hearing necessary for consideration of final plan approval. *See* Section 408 of the PRD Ordinance.

## B. Lawfulness of BPG's Agreement to Provide Substantial Off–Site Road Improvements as a Condition of the Board's Approval

■ NSE contends that the Board erred in approving the Tentative Plan because the Board included a condition of approval that requires BPG to pay for off-site road improvements valued at approximately $8.6 million. BPG asserts that NSE failed to raise this issue in a timely manner and that, therefore, the issue is waived. NSE did not raise the issue in its Second Amended Notice of Appeal (R.R. at 346a–353a), but rather first raised the issue in its brief to the trial court in support of its appeal of the Board's approval of the Tentative Plan, more than five months after the expiration of the thirty-day appeal period. Consequently, we agree with BPG that NSE waived this issue. *See Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh,* 554 Pa. 249, 255, 721 A.2d 43, 45 (1998) (holding that party failed to preserve issue where party did not raise issue before zoning hearing board or in notice of appeal to trial court).

## C. Trial Court Decision Not to Consolidate Appeals

■ NSE asserts that the trial court erred or abused its discretion in denying NSE's motion to consolidate this appeal with its appeal from the ZHB's order rejecting NSE's claim that the PRD Ordinance is invalid. NSE relies upon Pennsylvania Rule of Civil Procedure 213(a), which authorizes a trial court to consolidate matters that involve common questions of law or fact arising from the same transaction or occurrence. NSE contends that the "only way to maintain logical consistency in deciding these cases was to consolidate them." (NSE Brief at 27.)

■ The decision to grant or deny consolidation is a pure matter of discretion, and in this case, NSE has the opportunity to apprise the Court of any error on the merits evident in both appeals. A trial court commits an abuse of discretion only where the record indicates that the trial court misapplied the law, exhibited a manifestly unreasonable exercise of judgment, or when the final result evidences partiality, prejudice, bias, or ill-will. *Mento v. Bd. of Sch. Dirs. of the Montour Sch. Dist.,* 35 A.3d 66 (Pa.Cmwlth.2011). The record contains no basis from which the Court could conclude that the trial court exhibited a manifestly unreasonably exercise of judgment, and, therefore, we cannot conclude that the trial court abused its discretion.

## III. CONCLUSION

Accordingly, we affirm the orders of the trial court, which affirmed the decision of the Board and denied NSE's motion to consolidate.

### ORDER

AND NOW, this 29th day of December, 2011, the Orders of the Court of Common Pleas of Delaware County dated June 22, 2010, and June 24, 2010, are hereby AFFIRMED.

