**NEWTOWN SQUARE EAST, L.P., Appellant**

v.

**NATIONAL REALTY CORPORATION, Zoning Hearing Board of Newtown Township, Newtown Twp., BPG Real Estate Investors Straw PRT, Campus Investors Office B LP, Campus Investors 25 LP, Campus Investors 1 Building LP, Campus Investors H Building LP, Campus Investors D Building LP, Campus Investors Cottages LP, Campus Investors Office 2B LP, Ellis Preserve Owners Assoc. Inc., Kelly Preserve Owners Assoc. Inc., Cottages at Ellis Owners Assoc. Inc., Genber/Management Campus LLC, Berwind Property Group LTD, Executive Benefit Partnership Campus LP, Management Partnership–Benefit and Ellis Acquisition LP.**

**Newtown Square East, L.P., Appellant**

v.

**Zoning Hearing Board of Newtown Township, National Realty Corporation, Newtown Township, BPG Real Estate Investors Straw PRT, Campus Investors IFFICE B LP, Campus Investors 25 LP, Campus Investors 1**
**Building LP, Campus Investors H Building LP, Campus Investors D Building LP, Campus Investors Cottages LP, Campus Investors Office 2B LP, Ellis Preserve Owners Assoc. Inc., Kelly Preserve Owners Assoc. Inc., Cottages at Ellis Owners Assoc. Inc., Genber/Management Campus LLC, Berwind Property Group Ltd., Executive Benefit Partnership Campus LP, Management Partnership–Benefit, Ellis Acquisition LP.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Dec. 29, 2011.

See also 2011 WL 6839974

Arlen Specter, Philadelphia, John W. Nilon, Jr., Media, and Nancy L. Winkelman, Philadelphia, for appellant.

Marc B. Kaplin, Blue Bell, for appellee BPG Real Estate Investors.

Richard C. Sokorai, Norristown, and Vincent B. Mancini, Media, for appellee Zoning Hearing Board of Newtown Township.

BEFORE: LEADBETTER, President Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge BROBSON.

In these consolidated appeals, Appellant Newtown Square East, L.P. (NSE) appeals from several orders of the Court of Common Pleas of Delaware County (trial court). The orders pertain to NSE's validity challenge to the Planned Residential Development (PRD) Ordinance enacted by Newtown Township (the Township) in 2009 (PRD Ordinance), and to the trial court's imposition of an appeal bond on NSE.[1]

In the appeal docketed at 137 C.D. 2011, NSE seeks to challenge the trial court's January 25, 2011 order, which granted BPG's request for the imposition of an appeal bond upon NSE. In the appeal docketed at 2390 C.D. 2010, NSE appeals orders of the trial court that (1) affirmed the ZHB's decision and order denying NSE's validity challenge, and (2) denied NSE's motion to consolidate NSE's appeal of the ZHB's validity challenge decision and order with NSE's appeal of the

---

1. In a related proceeding, NSE challenged the December 4, 2009 approval of the Township's Board of Supervisors (Board) of a Tentative Plan for a PRD development submitted by Appellee BPG Real Estate Investors (BPG).

Board's approval of BPG's Tentative Plan.[2] We summarize the procedural and factual history below.

## I. BACKGROUND

Following review by the Delaware County Planning Commission (in January 2009) and public hearings (in June and July 2009), in which representatives of both NSE and BPG participated, the Board enacted the Township's PRD Ordinance. The PRD Ordinance created a PRD Overlay District, comprised of approximately 222 acres that encompass property owned by BPG and NSE, as well as other land upon which is located a post office, a firehouse, an office building, and a convenience store. BPG owns approximately 218 acres in the PRD Overlay District and additional property in other zoning districts, including the Township's Special Use SU–1 District, the I Industrial District, and the C–1 Commercial District.

NSE filed a challenge to the validity of the PRD Ordinance with the ZHB on August 12, 2009, raising the following issues: (1) whether the PRD Ordinance violates Article VII of the Pennsylvania Municipalities Planning Code (MPC)[3] by (a) failing to require developers to identify on a tentative plan the specific uses of buildings and other structures and the location and width of proposed streets and, thereby, (b) permitting the location of buildings on a tentative plan to be conceptual and subject

to free modification between the time of tentative plan approval and final plan approval;[4] and (2) whether the PRD Ordinance constitutes spot zoning.[5]

The ZHB conducted hearings on NSE's challenge. During the course of the hearings, NSE sought to submit testimony of a witness who purportedly played a role in drafting the MPC. The ZHB rejected that testimony, reasoning that the evidence NSE sought to submit constituted legal opinions, which would be presented best through briefs to the ZHB. By decision and order dated May 5, 2010, the ZHB denied NSE's validity challenge.

In determining that the PRD Ordinance is valid, the ZHB reasoned that the PRD Ordinance is not invalid simply because its language is not identical to the enabling language contained in the MPC's PRD provisions (relating to the identification of the uses of buildings proposed for a PRD). The ZHB noted that the PRD Ordinance requires the same information to be included in a tentative plan as the MPC and, therefore, concluded that it is consistent with the MPC. Moreover, the ZHB determined that the provisions relating to public hearings on alterations to tentative plans when submitted for final approval essentially mirror the MPC's post-tentative plan approval process. Furthermore, the ZHB noted that the MPC PRD provisions do not require a municipality to define every

---

2. NSE also raised this consolidation issue in its appeal to this Court from the decision of the trial court, affirming the Board's decision approving BPG's Tentative Plan under the PRD Ordinance. *Newtown Square East, L.P v. Township of Newtown,* —— Pa.Cmwlth ——, 38 A.3d 1008, (2011).

3. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10701–10713.

4. NSE also contended that the PRD Ordinance was invalid because, as applied to

BPG's proposed PRD, the PRD Ordinance permitted the categorical identification of uses within the proposed development as "commercial" uses, which NSE found objectionable in part because neither the MPC PRD provisions nor the PRD Ordinance define that term.

5. NSE does not raise an issue regarding spot zoning in this appeal, and, consequently, we will not further address that issue.

term in a PRD Ordinance. Rather, when an ordinance does not define a term, adjudicators may resort to plain meaning. Thus, the ZHB rejected NSE's claim that the PRD Ordinance was invalid.

NSE appealed the ZHB's decision to the trial court and requested that the trial court consolidate this matter with NSE's appeal of the Board's decision approving BPG's Tentative Plan. BPG also sought an order from the trial court directing NSE to post an appeal bond. The trial court affirmed the ZHB's decision and order denying the validity challenge, concluding that the PRD Ordinance does not exceed the limits for such municipal legislation authorized by the MPC and that the requirements of the PRD Ordinance were consistent with the MPC's PRD provisions. The trial court concluded that where inconsistencies between the MPC and the PRD Ordinance exist, those inconsistencies were of such minor character that they did not render the PRD Ordinance invalid. With regard to BPG's request for an order directing NSE to post an appeal bond, the trial court issued findings of fact and conclusions of law on January 25, 2011, granting the bond petition and finding that NSE filed its appeal for the purpose of delaying BPG's development, that NSE's appeal was frivolous, and that NSE had little likelihood of success in its appeal. The trial court directed NSE to post

$1,297,362.60 per month for every month NSE continues its appeal. The trial court also denied NSE's request to consolidate NSE's appeal of the ZHB's decision and order with NSE's appeal of the Board's approval of BPG's Tentative Plan.

■ NSE appealed from the trial court's orders to this Court,[6] raising several issues. First, as to the trial court's order pertaining to the validity challenge, NSE argues that the ZHB erred in concluding that the PRD Ordinance complies with the substantive provisions of the MPC authorizing a municipality's enactment of a PRD ordinance where (1) NSE alleges that the ZHB erroneously excluded the testimony of a drafter of the MPC; (2) the PRD Ordinance allegedly does not require a land developer to include in a tentative plan the specific use of and approximate location of buildings and other proposed structures; (3) the PRD Ordinance allegedly does not require a public hearing before the Board gives final approval of a PRD application; and (4) by virtue of the alleged failure of the PRD Ordinance to require a public hearing before final approval, the PRD Ordinance purportedly violates the due process rights of interested parties such as NSE, and is therefore void ab initio. Second, NSE argues that the trial court erred or abused its discretion in denying NSE's motion to

---

6. Because the parties appear to agree that the trial court in this case did not take any additional evidence, this Court's review is limited to determining whether the ZHB erred as a matter of law or abused its discretion in concluding that the PRD Ordinance is valid under the MPC. *Orange Stones Co. v. Borough of Hamburg, Zoning Hearing Bd. of Hamburg*, 28 A.3d 228, 231 (Pa.Cmwlth.2011). With regard to the issue of whether the trial court erred in requiring NSE to post an appeal bond, this Court's review is limited to considering whether the trial court abused its discretion. *Takacs v. Zoning Hearing Bd. of Indian Lake Borough*, 18 A.3d 354, 358 (Pa.Cmwlth.2011).

This Court's review of a trial court's order denying a motion to consolidate two appeals is similarly limited to considering whether the trial court abused its discretion. *Com. v. Gibbons*, 379 Pa.Super. 285, 549 A.2d 1296 (1988), *appeal denied*, 522 Pa. 601, 562 A.2d 825 (1989). Finally, with regard to NSE's argument that the trial court erred in denying NSE's attempt to introduce into the record testimony of a drafter of the MPC (which NSE characterizes as an expert), this Court's review is also limited to considering whether the trial court abused its discretion. *Cheng v. Se. Pennsylvania Transp. Auth.*, 981 A.2d 371, 381 (Pa.Cmwlth.2009).

consolidate. Third, NSE argues that the trial court erred in granting BPG's bond petition because (1) BPG filed its petition after NSE filed its notice of appeal with this Court and the appeal divested the trial court of jurisdiction under Pennsylvania Rule of Appellate Procedure 1701; (2) the trial court incorrectly concluded that NSE's appeal is frivolous; and (3) the trial court's decision to require NSE to post monthly bonds lacks a factual foundation, and the amount the trial court directed NSE to post is punitive.[7]

## II. DISCUSSION

### A. Whether the Trial Court Erred in Concluding That the PRD Ordinance Complies With or Is Consistent With the Substantive Provisions of the MPC?

In its overview of this argument, NSE contends that although the General Assembly, in adopting the PRD provisions of the MPC (Article VII), intended to provide municipalities with flexibility, municipalities may only adopt PRD ordinances that do not exceed the terms of the MPC. NSE relies upon this Court's decision in *Township of Middletown v. Abel,* 7 Pa.Cmwlth. 6, 297 A.2d 525 (1972), in support of this proposition. The PRD ordinance at issue in *Abel* contained a procedural mechanism

that required developers to obtain pre-approval of a developer's land use plan before the developer could apply for preliminary approval of a PRD. This Court concluded that the municipality's inclusion of an additional procedural step in the PRD approval process unlawfully exceeded the powers the General Assembly vested with municipalities for the enactment of PRD ordinances.

Based upon our decision in *Abel,* NSE asserts that any provision of a PRD Ordinance that exceeds the specific provisions of Article VII of the MPC is invalid. Initially, we observe that our decision in *Abel* pertains only to the procedural aspects of a PRD ordinance. The Court in *Abel* only addressed the specific language in the MPC that the Court perceived as circumscribing the procedural provisions that a municipality may adopt in a PRD ordinance. Thus, while the discussion and holding in *Abel* may be instructive, it is not clearly applicable in analyzing other non-procedural provisions of a PRD ordinance.

NSE primarily argues that, to the extent that the PRD Ordinance permits a developer at the tentative plan phase of the approval process to identify a use of a building in a generic or categorical sense, the PRD Ordinance is invalid. NSE argues that Section 707(4)(iv) of the MPC, 53

---

7. NSE also purports to challenge the trial court's order that granted a motion in limine that BPG filed in connection with the appeal bond hearing. NSE, however, failed to appeal this order of the trial court, and thus we have no jurisdiction to entertain any issues NSE seeks to raise relating to the trial court's order granting BPG's motion in limine. As the record reveals, the trial court issued its order on the merits of NSE's appeal of the ZHB's decision on October 28, 2010. NSE filed a notice of appeal of that decision on November 3, 2010, which sought to challenge that order and all underlying orders of the trial court. *Thereafter,* BPG filed its motion seeking an appeal bond, and BPG filed a

motion in limine relating to the evidence to be produced at the appeal bond hearing. The trial court issued an order on January 19, 2011, granting the motion in limine. The trial court issued a subsequent order on January 25, 2011, granting BPG's appeal bond motion. In its appeal from that latter decision, NSE challenged only the ultimate order granting the appeal bond. Consequently, NSE never specifically sought to challenge the order regarding the motion in limine when it challenged the appeal bond order. Accordingly, we will not address any issues NSE has raised regarding the trial court's granting of BPG's motion in limine.

P.S. § 10707(4)(iv), requires a developer to identify the *specific* use of a building at the tentative plan phase. Section 707 of the MPC provides as follows:

Application for tentative approval of planned residential development

In order to provide an expeditious method for processing a development plan for a planned residential development ... and to avoid ... delay and uncertainty ... it is hereby declared to be in the public interest that *all procedures* with respect to the approval or disapproval of a development plan for a planned residential development and the continuing administration thereof *shall be consistent with the following provisions:*

. . .

(3) *All* planning, zoning and subdivision *matters relating* to the platting, *use and development of the planned residential development* and subsequent modifications of the regulations relating thereto, to the extent such modification is vested in the municipality, shall be determined and established by the governing body or the planning commission.

(4) *The provisions shall require only such information in the application as is reasonably necessary to disclose to the governing body* or the planning agency:

. . .

(iv) *the use* and the approximate height, bulk, and location *of buildings and other structures.*

(Emphasis added.)

In order to determine whether the PRD Ordinance is invalid based upon an alleged inconsistency between the PRD Ordinance and the above-quoted provision of the MPC, we will first consider whether Section 707(4)(iv) of the MPC requires a developer to identify a proposed use in a tentative plan in a specific manner. We note initially that this section of the MPC neither defines the term "use" nor modifies the term "use" with the adjective "specific."

When a statute is doubtful in meaning or ambiguous, courts may apply the rules of statutory construction in order to arrive at the meaning of the statute. *Kissell v. Ferguson Twp. Zoning Hearing Bd.*, 729 A.2d 194, 197 (Pa.Cmwlth.1999); *Lonzetta v. Twp. of Hazle*, 30 Pa.Cmwlth. 503, 374 A.2d 743, 745 (1977). The question itself of whether a statute is ambiguous or of doubtful meaning rests on an initial evaluation of the statute. In this case, Section 707(4)(iv) of the MPC directs that a PRD ordinance should contain provisions relating to the contents of a tentative plan that will require the developer of a PRD to provide governing bodies with information regarding the use of buildings within a proposed PRD.

■ As indicated above, however, the narrower question NSE poses is whether the MPC, by requiring a PRD ordinance to include provisions that require a tentative plan to identify the use of buildings, requires developers to identify the *specific* use of a building (and/or parts thereof) rather than a categorical use, such as "retail use" or "commercial use."

Section 107 of the MPC, 53 P.S. § 10107, defines the term "planned residential development" as follows:

[A]n area of land ... to be developed as a single entity for a number of dwelling units, or combination of residential and *nonresidential uses*, the development plan for which does not correspond in lot size, bulk, type of dwelling, or use, density, or intensity, lot coverage and required open space to the regulations established in any one district created, from time to time, under the provisions of a municipal zoning ordinance.

(Emphasis added.) Thus, the MPC itself reflects a categorical division between two primary uses without regard to types of specific "uses" that an ordinance may permit. By referencing only these two broad categories of uses, the definition suggests that the General Assembly may have intended for the term "use" in Section 707(4)(iv) of the MPC to be interpreted in a different manner than the word "use" is generally employed in the land use and zoning context. Thus, the meaning of the term "use" in Section 707(4)(iv) is not clear and is open to more than one interpretation. Therefore, it is appropriate to apply the rules of statutory construction. *Milton S. Hershey Med. Cntr. of Pennsylvania St. Univ. v. Com., Med. Prof'l Liability Catastrophe Loss Fund*, 573 Pa. 74, 821 A.2d 1205 (2003) (holding that when statute is ambiguous courts may apply rules of statutory construction in order to determine General Assembly's intent).

A court's goal in construing a statute is to ascertain and effectuate the General Assembly's intent in adopting the statute. *Air–Serv Group, LLC v. Com.*, 18 A.3d 448, 451 (Pa.Cmwlth.2011). Generally, courts should not ignore the plain meaning of a statute where the words of the statute clearly express the legislative intent behind the statute. *Id.* "A cardinal rule of statutory construction," however, "is that we must give terms in a statute the meaning dictated by the context in which they are used." *Phila. Housing Auth. v. Pennsylvania Labor Relations Bd.*, 508 Pa. 576, 586, 499 A.2d 294, 299 (1985). Further, the Statutory Construction Act [8] reminds us that "[w]hen the words of [an ordinance] are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... the object to be obtained [and] the conse-

quences of a particular interpretation." 1 Pa.C.S. § 1921(c). Additionally, the rules of statutory construction direct courts to adhere to the notion that the drafters of a statute do not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1).

In this case, we are considering a statute that seeks to provide for flexibility in the creation of planned residential developments. Section 701 of the MPC.[9] Given that the MPC's definition of the term "planned residential development" makes reference only to two broad categories of uses—residential and non-residential uses—we perceive that decision on the part of the General Assembly as a signal regarding the scope of the provisions the General Assembly intended for municipalities to include in their PRD ordinances. It is reasonable to conclude that the General Assembly intended local PRD Ordinances to require information at the *tentative* plan approval phase that reflects the practical reality involved in non-residential uses— that they may change during the course of the approval process and even thereafter. Thus, the General Assembly, in recognizing this facet of multi-use development could reasonably have intended the term "use" in Section 707(4)(iv) of the MPC to have a generic meaning in the context of a PRD ordinance as compared to the technical meaning the word "use" has in other zoning and land use development contexts.

■ This interpretation makes sense especially where a mixed-use development is at issue. When a developer proposes a mixed-use development, as in this case, and a PRD ordinance provides for a mix of residential and non-residential uses, the identification by a developer of the categorical uses proposed for a PRD satisfies a

---

8. 1 Pa.C.S. §§ 1501–1991.

9. 53 P.S. § 10701.

governing body's need for information. Thus, identification of a use by reference to a category of uses enables the governing body to determine whether a tentative plan proposing a mixed-use area will satisfy the desired ratios of residential to non-residential uses reflected in a PRD ordinance. The MPC suggests no reason from a developmental perspective why more than a categorical identification of proposed use would be needed at the tentative plan approval stage.[10]

NSE suggests another reason why the Court should construe Section 707(4)(iv) of the MPC to mean that the ordinance should require the identification of specific uses. NSE argues that, by construing the MPC to mean that a PRD ordinance need only require categorical identification of uses of buildings, such a PRD ordinance would negate the procedural safeguards that the General Assembly provided to ensure that interested members of the public have an adequate opportunity to challenge a proposed PRD. NSE contends that, if the Court concludes that the MPC does not require PRD ordinances to pro-

vide for the specific designation of uses in a tentative plan, once a governing body approves a tentative plan, such potential objectors will not have the right to challenge the proposed use or uses of a building identified in a final plan.

NSE is correct in pointing out that Article VII of the MPC provides a clear requirement that a governing body conduct a public hearing at the tentative plan approval stage. Section 708 of the MPC, 53 P.S. § 10708. Section 711(a) of the MPC, 53 P.S. § 10711(a), however, also requires a governing body to conduct a public hearing before approving a final plan when a final plan deviates from a tentative plan. NSE is concerned that once a developer obtains approval of a tentative plan that contains categorical use identifications, the developer will be free to substitute any use, whether permitted or not under a PRD Ordinance, without being subject to review in a public hearing. We do not, however, view our interpretation of the MPC's use-designation provision as providing the opportunity for developers to take advantage of the final plan approval pro-

---

10. In support of its position that the Tentative Plan fails to comply with the MPC and the PRD Ordinance, NSE unsuccessfully attempted to submit in the ZHB hearing (as well as the bond hearing) the testimony of Professor Jan Z. Krasnowiecki, who assisted in the drafting of Article VII of the MPC. First, we disagree with NSE's contention that Professor Krasnowiecki's testimony is admissible for the purpose of demonstrating the meaning of Section 707(4)(iv) of the MPC. NSE relies upon our Supreme Court's decision in *Appeal of M.A. Kravitz Company*, 501 Pa. 200, 460 A.2d 1075 (1983), for the proposition that the testimony of a drafter of an ordinance is relevant to interpretation questions. In that case, however, no party challenged the admission of the testimony and the issue of admissibility or relevance was not before the Supreme Court. Further, NSE relies upon a decision of this Court in which we considered whether the testimony of a member of the Pennsylvania House of Representatives made during

floor debates concerning a law was admissible to determine the General Assembly's intent. *Allegheny Cty. Inst. Dist. v. Dep't of Pub. Welfare*, 668 A.2d 252 (Pa.Cmwlth.1995), *appeal denied*, 547 Pa. 757, 692 A.2d 567 (1997). This Court has consistently held that the floor debates occurring in the General Assembly do not constitute legislative history and are of dubious value in seeking to arrive at legislative intent. *Keller v. State Ethics Comm'n*, 860 A.2d 659 (Pa.Cmwlth.2004). NSE has offered no authority for the proposition that the opinion of a person who participated in the drafting of a law has greater evidentiary weight than the deliberations of persons who actually voted on a law. Further, as BPG points out, this Court has held that expert opinions relating to the meaning of laws are not relevant evidence for the purpose of statutory interpretation. *41 Valley Assoc. v. Bd. of Supervisors of London Grove Twp.*, 882 A.2d 5 (Pa.Cmwlth.2005), *appeal granted*, 587 Pa. 717, 898 A.2d 1073 (2006).

cess described in Article VII of the MPC in such a manner.

To demonstrate our point, we will take BPG's PRD as an example. The PRD Ordinance sets forth numerous specific permitted uses. In light of the fact that the PRD Ordinance is explicit with regard to uses permitted as of right, we view as an implicit fact that the Board's approval of BPG's Tentative Plan is limited to the residential and non-residential uses that the PRD Ordinance specifically permits. In other words, the Board only approved such uses as are permitted by the PRD Ordinance.

As BPG points out, the practicalities involved in developing a PRD suggest that developers need a degree of flexibility with regard to the identification of uses for a particular building, because potential tenants or occupants of a building may change as a result of factors beyond the control of a developer. For example, a developer may have engaged in discussions with a potential occupier who plans to operate a retail clothing business. That potential occupant's plans may fall through, and the developer may ultimately find another tenant interested in opening an office supply store. A developer may not have any firm commitments from nonresidential occupiers at the time of tentative plan approval. The contingencies are numerous and varied, and to hamstring a developer by binding it to a *specific* use is unreasonable at the tentative plan stage. In a worst-case scenario, under NSE's perspective, a de-

veloper might need to constantly return to the governing body for repeated approvals. NSE does not address such a scenario, but we find BPG's arguments and concerns persuasive in discerning the General Assembly's intent.[11]

We believe that the General Assembly intended to provide municipalities with the authority to adopt PRD ordinances with provisions that reflect the framework of the MPC, but which also enable municipalities to exercise discretion regarding the specific provisions of such ordinances. By way of example, we note that in following the terms of the PRD Ordinance, BPG submitted to the Board a Tentative Plan that provided the Board with the essential information necessary for the Board to determine whether the Tentative Plan satisfied a key goal of PRD development—the proper balance between residential and nonresidential uses as reflected in the PRD Ordinance. In this case, as indicated above, the Board's approval of the Tentative Plan would limit BPG to actual uses that the PRD Ordinance permits as of right, and the Board's approval of the Tentative Plan did not empower BPG to insert any use that is not permitted as of right. The PRD Ordinance, therefore, reflects the primary objectives of the governing body that enacted the PRD Ordinance—a legislative decision regarding desired ratios for residential and non-residential uses and the particular uses that the municipality desires to permit within a PRD.

---

**11.** Further, contrary to NSE's position, even if a governing body does not conduct a public hearing on a final plan, and there is a question regarding whether the final plan is in compliance with a tentative plan, an interested party would have the ability to challenge a governing body's decision, by taking an appeal of the final approval. Such an interested party could challenge a governing body's approval on the basis of alleged non-compliance with a tentative plan, and a reviewing court could consider whether the final plan does comply with an approved tentative plan. One of the issues a party could raise in such circumstances is whether any deviation from a tentative plan constitutes a material change that warrants public hearings before a governing body may approve a noncompliant final plan.

██ Further, we agree with the ZHB's conclusion that the language of the PRD Ordinance adequately tracks the language of the MPC. Section 402.4(H)(1) of the PRD Ordinance requires a developer to include the following information in a tentative plan: "A designation and location of the intended uses of all portions of the proposed development." In seeking to satisfy this requirement, a developer necessarily would be required to identify the uses of all buildings. Thus, this provision tracks Section 707(4)(iv) of the MPC. Moreover, as BPG points out, non-substantive differences between enabling legislation and a municipal ordinance will not render the ordinance invalid. *Boyd v. Zoning Hearing Bd. of Churchill Borough,* 83 Pa.Cmwlth. 110, 476 A.2d 499, 501–502 (1984). Consequently, we agree with the ZHB's conclusion that the PRD Ordinance is not invalid based upon NSE's assertion that the PRD Ordinance is inconsistent with the provisions of Article VII of the MPC.

██ NSE also argues that the PRD Ordinance violates the due process rights of interested parties by providing for approval of a final plan without providing notice or public hearing when a developer's final plan differs from its tentative plan. NSE suggests that the hearing and notice provisions of the PRD Ordinance differ from the MPC in this regard, but we fail to see any substantive difference in the process afforded by the MPC and the PRD Ordinance. Consistent with the MPC, the PRD Ordinance requires a governing body to conduct a public hearing before grant-

ing approval for a tentative plan. When a developer submits a final plan to the Board under the PRD Ordinance, Section 407.1 of the PRD Ordinance, in a manner similar to Section 711 of the MPC, requires the Board to conduct a public hearing if the final plan "is [not] in accordance with the approved Tentative Plan." [12] Implicitly, the PRD Ordinance requires the Board to take action on a final plan at a regular meeting, because under Section 408.2 of the PRD Ordinance the Board must grant final plan approval within forty-five (45) days of the *next regular Board meeting* following a developer's submission of an application for final plan approval. Thus, the PRD Ordinance is consistent with the provisions of the MPC regarding the approval of and potential public hearings on applications for final plan approval.

In support of its due process argument, NSE further engages in a lengthy discussion of the void ab initio doctrine. We do not agree with NSE that the doctrine applies to the scenario NSE has developed. NSE is correct to point out that our Supreme Court has concluded that the doctrine may apply to administrative decisionmaking, *Luke v. Cataldi,* 593 Pa. 461, 932 A.2d 45 (2007) (*Luke*), as well as to ordinances that may have been enacted in a procedurally defective manner, *Cranberry Park Associates v. Cranberry Township Zoning Hearing Board,* 561 Pa. 456, 751 A.2d 165 (2000) (*Cranberry*) (failure to follow procedural requirements for enactment of ordinance rendered ordinance void ab initio). In *Luke,* the question was whether procedures the municipality used

---

12. NSE asserts that Section 711(a) of the MPC "requires that neighboring landowners be given notice and hearing on a proposed Final Plan if that plan is not 'in compliance' with the approved [t]entative [p]lan." (NSE Brief at 31.) Section 711(a) of the MPC, however, nowhere refers to a requirement that a municipality or developer must give notice and hearing to neighboring landowners. That section only provides that a "public hearing ... shall not be required provided the development plan ... submitted for final approval ... is in compliance with the [tentative plan]." Section 711(a) of the MPC. Thus, NSE's argument is not supported by language in the MPC.

in the permit review and approval process for an application for a conditional use permit complied with the notice requirements of the MPC. Thus, the issue before the court was whether due process was violated by a municipality's failure to comply with the MPC's procedural mandates. In other words, the notice requirements were a function of a statutory provision, and the municipality's deviation from the mandatory procedures rendered the issuance of the conditional use permit void ab initio.

As we explained above, the approval process and the hearing provisions of the PRD Ordinance are consistent with the statutory approval and hearing process contained in the MPC. Further, as indicated above, we view the MPC as permitting a categorical identification of uses in a tentative plan. The concerns of NSE are unfounded because a governing body's approval of a tentative plan is limited to those uses that a PRD Ordinance permits.[13]

In summary, based upon our conclusion above that the Board's approval of a tentative plan limits the actual uses in a PRD, we conclude that both the MPC and the PRD Ordinance require only the designation of categorical uses in a tentative plan. In other words, the MPC does not include a mandate that municipalities adopt PRD ordinances requiring developers to identify specific non-residential uses. This interpretation is reasonable in light of the ambiguity of the provision, the apparent purpose and intent of the General Assembly in adopting Article VII of the MPC, and the rigidity that NSE's proffered interpretation would produce in light of the realities

of PRD development. Further, we also conclude that the PRD Ordinance does not permit a developer to include in a final plan submission a use that is not identified in a tentative plan when that use is not permitted under the PRD Ordinance. Such an action would trigger a requirement on the part of the Board to conduct public hearings on the final plan. Finally, the void ab initio doctrine does not apply to the PRD Ordinance.

## B. Whether the Trial Court Erred or Abused Its Discretion in Granting BPG'S Motion for Posting a Bond?

 NSE contends that the trial court abused its discretion or erred as a matter of law in granting BPG's motion for the posting of a bond. NSE first argues that the trial court lacked jurisdiction to entertain the motion. NSE relies upon the Supreme Court's power to adopt rules of procedure under Article V, Section 10(c) of the Pennsylvania Constitution for the proposition that the MPC's provision that specifically grants trial courts the power to consider requests to post bonds conflicts with the Supreme Court's rule-making power. NSE points to Pennsylvania Rule of Appellate Procedure 1701 in support of its argument that, once NSE filed its notice of appeal with the trial court, the trial court lost jurisdiction. We disagree with NSE's argument in this respect, noting that Pa. R.A.P. 1701 also vests the trial courts with the power to proceed to address ancillary matters occurring after a party files a notice of appeal. We believe that the bond matter is ancillary to the appeal, and that, therefore, the trial court had the power to consider the motion. Nevertheless, for the reasons that follow,

---

**13.** NSE also seems to suggest that the PRD Ordinance is inconsistent with the MPC's requirement that ordinance provisions designate the approximate location of buildings. We disagree, because Section 402.4(H)(7) of

the PRD Ordinance provides that a tentative plan designate the "approximate height, bulk and location of buildings and other structures."

we agree with NSE that the trial court abused its discretion in granting BPG's motion.

 Under Section 1003–A(d) of the MPC,[14] a party seeking to have a trial court direct the posting of an appeal bond must demonstrate that the appeal is frivolous. In evaluating whether a trial court correctly concluded that an appeal is frivolous, this Court must consider the merits of the appeal. *In re Kuzmiak*, 845 A.2d 961 (Pa.Cmwlth.2004). This Court has opined that the mere novelty of an issue is not a sufficient basis from which to determine whether an issue has merit. *Appeal of Langmaid Lane Homeowners Ass'n*, 77 Pa.Cmwlth. 53, 465 A.2d 72, 76 (1983). Rather, a court may conclude that an issue is frivolous when there is no reasoned interpretation that might support an appellant's position, and, therefore, the appellant had no reasonable chance of success. *Id.*

In this case, our discussion above illustrates that NSE's view that the MPC requires the designation of a specific use for buildings in a tentative plan was not so clear-cut as to support a conclusion that NSE's appeal was frivolous. Although the question NSE presented is one of first impression, and, therefore, novel, the issue also required this Court to engage in statutory construction because of the conflict between the General Assembly's selection of the word "use" in Section 707(4)(iv) of the MPC and the meaning that is generally ascribed to that term in the land development and zoning context. Thus, we conclude that the trial court erred in concluding that NSE's appeal is frivolous. Because we conclude that NSE's appeal is not frivolous, we will reverse the trial court's order granting BPG's bond motion, and we need not address the question of whether the trial court abused its discretion in awarding the amount of bond it directed NSE to post, as that question is now moot.

**C. Whether the Trial Court Erred in Denying NSE'S Motion to Consolidate This Appeal With NSE'S Appeal of the Board's Decision Approving BPG'S Tentative Plan?**

 A trial court's decision to grant or deny consolidation is a pure matter of discretion. A trial court commits an abuse of discretion only where the record indicates that the trial court misapplied the law, exhibited a manifestly unreasonable exercise of judgment, or when the final result evidences partiality, prejudice, bias, or ill-will. *Mento v. Bd. of Sch. Dirs. of the Montour Sch. Dist.*, —— Pa.Cmwlth ——, 35 A.3d 66 (2011). The record contains no basis from which the Court could conclude that the trial court exhibited a manifestly unreasonably exercise of judgment, and, therefore, we cannot conclude that the trial court abused its discretion.

## III. CONCLUSION

Accordingly, we will affirm the following orders of the trial court from which NSE has appealed: (1) the trial court's order affirming the ZHB's order denying NSE's

---

**14.** Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11003–A(d). Section 1003–A(d) provides:

The filing of an appeal in court under this section shall not stay the action appealed from, but the appellants may petition the court having jurisdiction of land use appeals for a stay. If the appellants are persons who are seeking to prevent a use or development of the land of another, whether or not a stay is sought by them, the landowner whose use or development is in question may petition the court to order the appellants to post bond as a condition to proceeding with the appeal.

challenge to the validity of the Township's PRD Ordinance; and (2) the trial court's order denying NSE's request to consolidate this appeal with its appeal of the Board's order approving BPG's Tentative Plan. With regard to NSE's appeal of the trial court's order granting BPG's request for the imposition of an appeal bond, we will reverse the trial court's order.

### ORDER

AND NOW, this 29th day of December, 2011, (1) the trial court's order dated October 28, 2010, affirming the ZHB's order denying NSE's challenge to the validity of the Township's PRD Ordinance; and (2) the trial court's order dated June 22, 2010, denying NSE's request to consolidate this appeal with its appeal of the Board's order approving BPG's Tentative Plan, are hereby AFFIRMED. With regard to NSE's appeal of the trial court's order dated January 25, 2011, granting BPG's request for the imposition of an appeal bond, the trial court's order is hereby REVERSED.