**[J-58A-C-2013]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| NEWTOWN SQUARE EAST, L.P., | : No. 14 MAP 2013 |
| | : |
| Appellant | : Appeal from the Order of the |
| | : Commonwealth Court dated December |
| | : 29, 2011 at No. 1474 CD 2010 which |
| v. | : affirmed the Order of the Delaware |
| | : County Court of Common Pleas, Civil |
| | : Division dated June 24, 2010 at No. 09- |
| TOWNSHIP OF NEWTOWN, | : 14594 |
| | : |
| Appellee | : ARGUED: September 10, 2013 |
| | : |
| BPG REAL ESTATE INVESTORS- | : |
| STRAW PARTY-1, L.P., BPG REAL | : |
| ESTATE INVESTORS-STRAW PARTY-II, | : |
| CAMPUS INVESTORS OFFICE B, L.P., | : |
| CAMPUS INVESTORS 25, L.P., CAMPUS | : |
| INVESTORS 1 BUILDING, L.P., CAMPUS | : |
| INVESTORS H BUILDING, L.P., | : |
| CAMPUS INVESTORS D BUILDING, L.P. | : |
| CAMPUS INVESTORS COTTAGES, L.P. | : |
| CAMPUS INVESTORS OFFICE 2B, L.P., | : |
| ELLIS PRESERVE OWNERS ASSOC., | : |
| INC., KELLY PRESERVE OWNERS | : |
| ASSOC., INC., COTTAGES AT ELLIS | : |
| OWNERS ASSOC., INC., | : |
| GENBER/MANAGEMENT CAMPUS LLC, | : |
| BERWIND PROPERTY GROUP, LTD., | : |
| EXECUTIVE BENEFIT PARTNERSHIP | : |
| CAMPUS L.P., MANAGEMENT | : |
| PARTNERSHIP-BENEFIT AND ELLIS | : |
| ACQUISITION L.P., | : |
| | : |
| Intervenors | : |

| | |
|---|---|
| NEWTOWN SQUARE EAST, L.P., C/O NATIONAL REALTY CORPORATION, | : No. 15 MAP 2013 |
| | : |
| | : Appeal from the Order of the |
| Appellant | : Commonwealth Court dated December |
| v. | : 29, 2011 at No. 2390 CD 2010 |
| | : Affirming/Reversing the Order of the |
| ZONING HEARING BOARD OF NEWTOWN TOWNSHIP, DELAWARE COUNTY, PENNSYLVANIA, | : Delaware County Court of Common |
| | : Pleas, Civil Division, dated October 28, |
| | : 2010 at No. 10-4799 |
| | : |
| Appellee | : |
| | : |
| NEWTOWN TOWNSHIP, Intervenor | : |
| | : Argued: September 10, 2013 |
| BPG REAL ESTATE INVESTORS-STRAW PARTY-1, L.P., BPG REAL ESTATE INVESTORS-STRAW PARTY-II, CAMPUS INVESTORS OFFICE B, L.P., CAMPUS INVESTORS 25, L.P., CAMPUS INVESTORS 1 BUILDING, L.P., CAMPUS INVESTORS H BUILDING, L.P., CAMPUS INVESTORS D BUILDING, L.P. CAMPUS INVESTORS COTTAGES, L.P. CAMPUS INVESTORS OFFICE 2B, L.P., ELLIS PRESERVE OWNERS ASSOC., INC., KELLY PRESERVE OWNERS ASSOC., INC., COTTAGES AT ELLIS OWNERS ASSOC., INC., GENBER/MANAGEMENT CAMPUS LLC, BERWIND PROPERTY GROUP, LTD., EXECUTIVE BENEFIT PARTNERSHIP CAMPUS L.P., MANAGEMENT PARTNERSHIP-BENEFIT AND ELLIS ACQUISITION L.P., | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Intervenors | : |
| | : |

| | |
|---|---|
| NEWTOWN SQUARE EAST, L.P., C/O NATIONAL REALTY CORPORATION | : No. 16 MAP 2013 |
| | : |
| | : |
| Appellant | : |
| | : Appeal from the Order of the |
| | : Commonwealth Court dated December |
| v. | : 29, 2011 at No. 137 CD 2011 |
| | : Affirming/Reversing the Order of the |
| | : Delaware County Court of Common |
| ZONING HEARING BOARD OF | : Pleas, Civil Division, dated January 25, |
| NEWTOWN TOWNSHIP, DELAWARE | : 2011 at No. 10-4799 |
| COUNTY, PENNSYLVANIA, | : |
| | : |
| Appellee | : Argued:  September 10, 2013 |
| | : |
| NEWTOWN TOWNSHIP, | : |
| | : |
| Intervenor | : |
| | : |
| | : |
| BPG REAL ESTATE INVESTORS- | : |
| STRAW PARTY-1, L.P., BPG REAL | : |
| ESTATE INVESTORS-STRAW PARTY-II, | : |
| CAMPUS INVESTORS OFFICE B, L.P., | : |
| CAMPUS INVESTORS 25, L.P., CAMPUS | : |
| INVESTORS 1 BUILDING, L.P., CAMPUS | : |
| INVESTORS H BUILDING, L.P., | : |
| CAMPUS INVESTORS D BUILDING, L.P. | : |
| CAMPUS INVESTORS COTTAGES, L.P. | : |
| CAMPUS INVESTORS OFFICE 2B, L.P., | : |
| ELLIS PRESERVE OWNERS ASSOC., | : |
| INC., KELLY PRESERVE OWNERS | : |
| ASSOC., INC., COTTAGES AT ELLIS | : |
| OWNERS ASSOC., INC., | : |
| GENBER/MANAGEMENT CAMPUS LLC, | : |
| BERWIND PROPERTY GROUP, LTD., | : |
| EXECUTIVE BENEFIT PARTNERSHIP | : |
| CAMPUS L.P., MANAGEMENT | : |
| PARTNERSHIP-BENEFIT AND ELLIS | : |
| ACQUISITION L.P., | : |
| | : |
| Intervenors | : |

**OPINION**

MR. JUSTICE McCAFFERY                    DECIDED: September 24, 2014

On July 13, 2009, pursuant to enabling legislation in Article VII of the Municipalities Planning Code[1] ("MPC"), the Newtown Township Board of Supervisors ("Township Board") enacted a Planned Residential Development Ordinance ("PRD Ordinance").[2] This appeal involves challenges to the validity of that ordinance and to the approval of a Tentative PRD Plan pursuant to it.

In permitting the creation of PRD's, the General Assembly sought "to encourage innovations in residential and nonresidential development … so that the growing demand for housing and other development may be met by greater variety in type, design and layout of dwellings and other buildings and structures and by the conservation and more efficient use of open space ancillary to said dwellings and uses." 53 P.S. § 10701. As the Commonwealth Court has explained,

> PRDs offer an alternative to traditional, cookie-cutter zoning. A PRD is "a larger, integrated planned residential development which does not meet standards of the usual zoning districts" and offers municipalities flexibility. … "The idea behind PRD zoning is to create a method of approving large developments which overrides traditional zoning controls and permits the introduction of flexibility into the design of larger developments."

Kang v. Supervisors of Township of Spring, 776 A.2d 324, 328 (Pa.Cmwlth. 2001) (quoting 2 Robert S. Ryan, Pennsylvania Zoning Law and Practice, § 12.1.1 and § 12.1.8 (1981)).

---

[1] 53 P.S. §§ 10701-13, Act of July 31, 1968, P.L. 805, as amended.

[2] Township of Newtown Planned Residential Development Ordinance of 2009, Ordinance No. 2009-02.

On January 22, 2009,[3] Intervenors BPG Real Estate Investors ("BPG") submitted an application under the anticipated PRD Ordinance for approval of a Tentative PRD Plan, proposing multi-use development of an approximately 218-acre tract of land that it owned. The Township Board orally approved BPG's Tentative PRD Plan on October 13, 2009, and issued a written decision granting approval on December 4, 2009.

In August 2009 and November 2009, respectively, Newtown Square East, L.P. ("NSE"), which owned a two-acre tract of land adjacent to BPG's tract, filed a challenge to the validity of the PRD Ordinance with the Newtown Township Zoning Hearing Board ("Zoning Board"), and filed an appeal of the Township Board's approval of BPG's Tentative PRD Plan with the court of common pleas.

With regard to its validity challenge before the Zoning Board, NSE argued, *inter alia*, that the PRD Ordinance violated Article VII of the MPC by, allegedly, failing to require that a tentative plan identify the uses of buildings and other structures, and permitting the location of buildings to be subject to free modification between the time of tentative plan approval and final plan approval. Following several hearings, the Zoning Board upheld the validity of the PRD Ordinance, finding that its minor textual variations from the relevant provisions of the MPC, Article VII, did not create an inconsistency or conflict with the enabling legislation. See NSE's PRD Validity Challenge before the Zoning Hearing Board of Newtown Township, Findings of Fact, Discussion, Conclusions of Law and Decision/Order, dated 5/5/10 ("Zoning Board Decision"), at 24-35. NSE

---

[3] As the Commonwealth Court has pointed out, BPG submitted its application for approval of its Tentative PRD Plan prior to the Township's enactment of the PRD Ordinance. Newtown Square East, L.P. v. Township of Newtown, 38 A.3d 1008, 1010 n.2 (Pa.Cmwlth. 2011). The Commonwealth Court characterized such an approach as "unorthodox," but we, like the Commonwealth Court, "are unaware of any prohibition against a municipality engaging in pre-public hearing initial review of a Tentative Plan based upon the anticipated enactment of an ordinance." Id.

appealed the Zoning Board's decision to the court of common pleas, which affirmed without taking any additional evidence. Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, No. 10-4799, Opinion (Ct.Com.Pleas, filed 10/28/10). The court held that the PRD Ordinance did not exceed the scope of authority granted by Article VII, had the same requirements as Article VII, and was not rendered invalid by its minor textual differences from Article VII. Id. at 5.

The court of common pleas also affirmed the Township Board's approval of the Tentative PRD Plan. Newtown Square East, L.P. v. Township of Newtown, No. 09-14594, Opinion (Ct.Com.Pleas, filed 4/6/11). Specifically, following a hearing at which evidence was taken, the court found that the Tentative PRD Plan "met the requirements of the PRD Ordinance and that the Board's approval of the [Plan] was supported by substantial credible evidence." Id. at 6. NSE appealed both decisions to the Commonwealth Court.

In separate opinions, the Commonwealth Court upheld the validity of the PRD Ordinance and the Township Board's approval of the Tentative PRD Plan.[4,5] See, respectively, Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 38 A.3d 1018, 1023-29 (Pa.Cmwlth. 2011); Newtown Square East, L.P. v.

---

[4] NSE had filed a motion to consolidate its two appeals before the court of common pleas, but the court denied that motion, and the Commonwealth Court upheld the denial. Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 38 A.3d 1018, 1030 (Pa.Cmwlth. 2011).

[5] The court of common pleas had also found that NSE's appeal of the validity of the PRD Ordinance was frivolous and was filed for the purpose of delaying BPG's development of its land. The trial court accordingly had granted BPG's motion requiring NSE to post a bond. Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, No. 10-4799, Opinion and Findings of Fact and Conclusions of Law (Ct.Com.Pleas, filed 1/25/11). However, the Commonwealth Court reversed this portion of the trial court's decision. Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 38 A.3d at 1029-30.

Township of Newtown, 38 A.3d 1008, 1013-17 (Pa.Cmwlth. 2011). NSE then sought allowance of appeal to this Court.

We granted NSE's petitions for allowance of appeal, limited to the following three issues:

> 1. Did the Commonwealth Court err in interpreting the MPC as authorizing a developer's Tentative Plan to designate the use of buildings by generic designation only as "residential" or "nonresidential" so as to effectively negate the MPC's due process safeguards requiring notice and a public hearing and thereby deny due process to the public and neighboring property owners?
>
> 2. Did the Commonwealth Court err in adopting a novel interpretation of MPC Section 707(4)(iv) that has no basis in the law, that conflicts with the meaning of the term "use" throughout the MPC, and that conflicts with this Court's decision in Eves v. Zoning Board of Adjustment, 164 A.2d 7 (Pa. 1960)?
>
> 3. Did the Commonwealth Court err in holding that the Tentative Plan complies with the PRD Ordinance and the MPC when the Tentative Plan fails to reveal the use of buildings, as required by a valid PRD Ordinance and by the MPC?

Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 64 A.3d 624, 625 (Pa. 2013); Newtown Square East, L.P. v. Township of Newtown, 64 A.3d 625 Pa. 2013).

A zoning ordinance is presumed valid, and a challenger must carry the heavy burden to prove otherwise. Township of Exeter v. Zoning Hearing Board of Exeter Township, 962 A.2d 653, 660 (Pa. 2009); Upper Salford Township v. Collins, 669 A.2d 335, 336 (Pa. 1995). To the extent that NSE's issues before this Court rest on interpretation of the MPC, they present a question of law for which our standard of

review is *de novo* and our scope is plenary. Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets, Inc., 52 A.3d 1233, 1239 (Pa. 2012); Dechert LLP v. Commonwealth of Pennsylvania, 998 A.2d 575, 579 (Pa. 2010). The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). The best indicator of the legislature's intent is the statute's plain language. Dechert, supra. Words and phrases are to be construed according to their common and approved usage. 1 Pa.C.S. § 1903(a). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). However, when the words of the statute are not explicit, the General Assembly's intent may be ascertained by considering, *inter alia*, the object to be attained by the statute and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). We presume that the General Assembly does not intend a result that is absurd or unreasonable, but does intend for the entire statute to be effective and certain. 1 Pa.C.S. § 1922.

A local governing body is properly afforded deference in interpreting its own zoning ordinance. Broussard v. Zoning Board of Adjustment of the City of Pittsburgh, 907 A.2d 494, 500 (Pa. 2006); Aldridge v. Jackson Township, 983 A.2d 247, 254 (Pa.Cmwlth. 2009). Our appellate review of the zoning ordinance at issue is limited to determining whether the local governing body abused its discretion or committed an error of law. Broussard, supra at 498; Upper Salford Township v. Collins, supra at 337; Ligo v. Slippery Rock Township, 936 A.2d 1236, 1241 n.5 (Pa.Cmwlth. 2007); Kang, supra at 327 n.7.

**MPC**

Several portions of the MPC are relevant to our analysis, beginning with the MPC's definition of a PRD, as follows:

> **"Planned residential development,"** an area of land, controlled by a landowner, to be developed as a single entity for a number of dwelling units, or combination of residential and nonresidential uses, the development plan for which does not correspond in lot size, bulk, type of dwelling, or use, density, or intensity, lot coverage and required open space to the regulations established in any one district created, from time to time, under the provisions of a municipal zoning ordinance.

53 P.S. § 10107 (Definitions).

As set forth in the MPC Article VII (Planned Residential Development), the purposes of a PRD include, most relevantly, the following:

> … to encourage innovations in residential and nonresidential development and renewal so that the growing demand for housing and other development may be met by greater variety in type, design and layout of dwellings and other buildings and structures and by the conservation and more efficient use of open space ancillary to said dwellings and uses; … to provide a procedure which can relate the type, design and layout of residential and nonresidential development to the particular site and the particular demand for housing existing at the time of development … and to insure that the *increased flexibility of regulations over land development authorized herein* is carried out under such administrative standards and procedures as shall *encourage the disposition of proposals for land development without undue delay* … .

53 P.S. § 10701 (emphases added).

Section 10702 grants the governing body of each municipality the authority to set forth the standards, conditions, and regulations for a PRD, as well as the procedures pertaining to the application for, hearing on, and tentative and final approval of a PRD, all of which must be consistent with the provisions of Article VII. The standards, conditions, and regulations most relevant to the instant case include the following:

(b) The provisions adopted pursuant to [Article VII] shall set forth the uses permitted in a planned residential development, which uses may include but shall not be limited to:

(1) Dwelling units of any dwelling type or configuration, or any combination thereof.

(2) Those nonresidential uses deemed to be appropriate for incorporation in the design of the [PRD].

53 P.S. § 10705(b) (Standards and conditions for planned residential development).

Section 10707 sets forth the requirements for an application for tentative approval of a PRD, which in relevant part are as follows:

### § 10707.  Application for tentative approval of planned residential development

In order to provide an *expeditious method for processing a development plan* for a planned residential development under the provisions adopted pursuant to the power granted herein, and *to avoid the delay and uncertainty which would arise if it were necessary to secure approval, by a multiplicity of local procedures, of a plat of subdivision* as well as approval of a change in the zoning regulations otherwise applicable to the property, it is hereby declared to be in the public interest that all procedures with respect to the approval or disapproval of a development plan for a planned residential development and the continuing administration thereof shall be consistent with the following provisions:

(1) An application for tentative approval of the development plan for a planned residential development shall be filed by or on behalf of the landowner.

* * * * *

(4) The provisions shall require only such information in the application as is reasonably necessary to disclose to the governing body or the planning agency:

* * * * *

> (ii) the density of land use to be allocated to parts of the site to be developed;
>
> (iii) the location and size of the common open space …;
>
> (iv) the *use* and the approximate height, bulk and location of buildings and other structures;

53 P.S. § 10707 (emphases added).

Pursuant to Section 10708 (Public Hearings), "a public hearing pursuant to public notice" on an application for tentative approval of a PRD plan must be held within sixty days after the application is filed. Then, the governing body or planning agency must, "by official written communication" including findings of fact and reasons for the action, take one of three actions: grant tentative approval of the PRD plan, grant tentative approval subject to specified conditions, or deny tentative approval. 53 P.S. § 10709(a) and (b).

The requirements and procedures for final approval of a PRD plan are set forth in Section 10711. An application for final approval "shall include any drawings, specifications, covenants, easements, performance bond and such other requirements as may be specified by ordinance, as well as any conditions set forth in the official written communication at the time of tentative approval." 53 P.S. § 10711(a). Importantly, a public hearing on an application for final approval is not required "provided the development plan … submitted for final approval, is in compliance with the development plan theretofore given tentative approval and with any specified conditions attached thereto." Id. If the PRD plan submitted for final approval does have variations from the plan given tentative approval, then the governing body or planning agency *may* refuse to grant final approval of the plan. 53 P.S. § 10711(c). In such case the

landowner may either refile the application for final approval without the variations or request a public hearing on his application for final approval.  Id.

**PRD Ordinance**

As mandated by the MPC § 10705(b), quoted supra, the PRD Ordinance set forth the uses permitted in the PRD at issue here.  Specifically, the PRD listed the following twenty-one types of uses permitted as of right.

302.  Use Regulations

A. Uses as of right:

1.      Single-family dwellings.
2.      Two-family dwellings.
3.      Townhouses.
4.      Multifamily dwellings, including residences in mixed-use commercial/residential buildings
5.      Retail store(s).
6.      Personal service establishments, tailor, barber, beauty, shoe repair, spa, dressmaking shop, and other personal service shop or store.
7.      Bank or other similar financial institution, including a drive in banking facility or automated teller facility.
8.      Business, administrative, executive, governmental, professional, sales and/or similar offices.
9.      Places of indoor amusement, recreation or assembly.
10.     Movie theaters.
11.     Restaurant, cafe, including establishments dispensing or serving food for consumption on the premises outdoors. Drive-in food stands shall not be permitted.
12.     Grocery or convenience store.
13.     Hotel or inn.
14.     Educational institution.
15.     Conference center.
16.     Public and private garages and parking lots.
17.     Civic uses such as a police station, municipal office, fire station, post office, EMS service, and transit facility.
18.     Playgrounds, parks, tot lots or open spaces.
19.     Health club, fitness center, indoor squash, tennis, or racquetball facilities, or other similar uses.

20.    Nursery schools and day care centers.
21.    Accessory use on the same lot with and customary and incidental to any of the foregoing.

PRD Ordinance, Article III, § 302.A.

Section 302.B of the PRD Ordinance sets forth the "Mix Requirements" for a PRD, specifying that in mixed-use areas, at least 10% but not more than 50% of the new floor area shall be devoted to residential uses, and at least 20% but no more than 75% shall be devoted to retail, restaurant, markets, or cinema uses.

Article IV of the PRD Ordinance details the submission and review procedures for applications for tentative approval and for final approval of a PRD, as follows.

402. APPLICATION FOR TENTATIVE APPROVAL.

\*    \*    \*    \*    \*

402.4 Tentative Plan Requirements.    The intent of the Tentative Plan submission requirements is to provide the schematic design and planning information specifically required by Section 707(4) of [the MPC] ... .

\*    \*    \*    \*    \*

The Tentative Plan shall include:

\*    \*    \*    \*    \*

H. A Proposed Overall Development Plan including:

1. A designation and location of the intended *uses* of all portions of the proposed development.

\*    \*    \*    \*    \*

6. The location, paving, and right of way widths of all existing streets and proposed streets and public ways.  The location of proposed local streets with in an individual Development Section shall be considered to be for conceptual purposes

only and may be modified between the time of Tentative Plan approval and Final Plan submission.

7. The approximate height, bulk and location of buildings and other structures. It is specifically recognized that the locations and configurations of buildings shown on the Overall Development Plan may change between Tentative Plan approval and Final Plan approval.

PRD Ordinance, Article IV, § 402.4 (emphasis added).

407. APPLICATION FOR FINAL PLAN APPROVAL.

407.1 An application for Final Plan Approval may be made for all the land included in the PRD or for one or more specific Development Sections as delineated on the approved Tentative Plan ... . If the application for Final Plan approval is in accordance with the approved Tentative Plan and any specified conditions, a public hearing need not be required.

PRD Ordinance, Article IV, § 407.1.

408. REVIEW OF FINAL PLAN.

* * * * *

408.2 ... A public hearing on an application for Final Plan Approval shall not be required provided the submission for final approval is determined to be consistent with this Article and the official written communication granting Tentative Plan approval.

408.3 In the event the Final Plan as submitted contains variations from the approved Tentative Plan, Board of Supervisors may refuse to grant Final Plan approval, and … shall so advise the Applicant in writing of its refusal, setting forth in the notice the reasons why one or more of the variations are not in the public interest. In the event an application for Final Plan Approval is denied approval, the Applicant may either:

> A. Refile his application for Final Approval without the variations objected to; or
>
> B. File a written request with the Board of Supervisors that it hold a public hearing on his application for Final Plan Approval.

PRD Ordinance, Article IV, §§ 408.2 and 408.3.

## I.  Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township

Before the Commonwealth Court, NSE argued that the Zoning Board had erred in concluding that the PRD Ordinance was consistent with the above provisions of the MPC, Article VII, because, *inter alia*, "[i] the PRD Ordinance [ ] does not require a land developer to include in a tentative plan the *specific use* of and approximate location of buildings and other proposed structures[, and] [ii] the PRD Ordinance [ ] does not require a *public hearing* before the Board gives final approval of a PRD application," thereby purportedly violating the due process rights of interested parties.  NSE v. Zoning Board, 38 A.3d at 1022 (emphases added).

### i.  Use Designation Challenge

The Commonwealth Court formulated NSE's use designation challenge to the PRD Ordinance as follows: "whether the MPC, by requiring a PRD Ordinance to include provisions that require a tentative plan to identify the use of buildings, requires developers to identify the *specific* use of a building (and/or parts thereof) rather than a categorical use, such as 'retail use' or 'commercial use.'" NSE v. Zoning Board, 38 A.3d at 1024 (emphasis in original).  Citing the goal of the MPC, Article VII, to provide flexibility in the creation of PRD's and the exclusive, broad categories of use (residential and non-residential) provided in the statutory definition of PRD's, see 53 P.S. 10107, quoted supra, the Commonwealth Court concluded that subsection 707(4)(iv)'s use

designation provision refers not to a specific use, but rather to "a category of uses [that] enables the governing body to determine whether a tentative plan proposing a mixed-use area will satisfy the desired ratios of residential to non-residential uses reflected in a PRD ordinance." NSE v. Zoning Board, 38 A.3d at 1026. The court determined that the "MPC suggests no reason from a developmental perspective why more than a categorical identification of proposed use would be needed at the tentative plan approval stage." Id. Accordingly, the Commonwealth Court declined to afford NSE relief.

Before this Court, NSE has now abandoned its claim that the PRD Ordinance is invalid because it fails to require a landowner to include in a tentative PRD plan the specific use of each building. Recognizing that the PRD Ordinance at issue here sets forth numerous categories of uses permitted as of right, see PRD Ordinance § 302.A, supra (listing 21 permitted uses, including various types of family dwellings, retail stores, business offices, theaters, restaurants, hotels, educational institutions, nursery schools, garages, civic uses, etc.), NSE now acknowledges that the PRD Ordinance "requires the appropriate level of specificity regarding identification of 'use" in a Tentative Plan." NSE's Reply Brief at 8 n.3; see also id. at 8 ("An example of what NSE means by 'specific types of uses' is found in Newtown Township's own PRD Ordinance, which designates 21 permissible 'uses' ... .").

While abandoning its claim that the PRD Ordinance at issue here is inconsistent with the MPC's use designation requirement of § 10707(4)(iv), NSE maintains that the Commonwealth Court nevertheless erred in concluding that designation of use merely as either residential or non-residential is sufficient under the MPC Article VII. NSE's Brief at 21-33; see NSE's Reply Brief at 1 ("The primary issue in this case is whether Section 707(4)(iv) of Article VII of the … MPC requires a developer in its Tentative Plan

for a … PRD to do more than identify merely whether a proposed use is 'residential' or 'nonresidential.'"). However, this question is not properly before this Court. Insofar as the Commonwealth Court suggested that a designation of either residential or non-residential was sufficient to satisfy the use designation requirement of the MPC § 10707(4)(iv), the court's determination is *dicta*. Whether a PRD ordinance that allowed usage at the tentative plan stage to be designated as simply residential or non-residential was not a question before the Commonwealth Court, and is not a question properly before this Court. We decline to rule on a theoretical ordinance.

### ii. **Public Hearing Challenge**

As mentioned above, NSE also asserted before the Commonwealth Court that the PRD Ordinance is invalid because it does not require a public hearing prior to the Township Board's approval of a final PRD plan. The court held that there was no "substantive difference in the process afforded by the MPC and the PRD Ordinance." NSE v. Zoning Board, 38 A.3d at 1028. Consistent with subsection 10711(a) of the MPC, the PRD Ordinance does not require a public hearing at the final approval stage if the application for final plan approval is in accordance with and is consistent with the approved tentative plan. See PRD Ordinance § 407.1 and § 408.2. Under both the MPC and the PRD Ordinance, a public hearing is required at the final plan approval stage *only* if the PRD plan submitted for final approval has "variations" from the approved tentative plan, the Township Board accordingly refuses to grant final plan approval, and the landowner requests a public hearing. Compare 53 P.S. § 10711(c) and PRD Ordinance § 408.3. Thus, as the Commonwealth Court correctly held, "the PRD Ordinance is consistent with the provisions of the MPC regarding the approval of and potential public hearings on applications for final plan approval." NSE v. Zoning Board, 38 A.3d at 1028.

Before this Court, NSE emphasizes two provisions of the PRD Ordinance, to wit, §§ 402.4(H)(6) and (H)(7), which provide, respectively, that the location of proposed local streets "may be modified" and that the locations and configuration of buildings "may change" between the time of Tentative Plan approval and Final Plan submission or approval. Grounding its argument in these two provisions, NSE asserts that the Commonwealth Court erred, and maintains that the PRD Ordinance is invalid because it permits uses to "float" between the tentative plan and final plan stages, allegedly in violation of the MPC. NSE's Brief at 33-34; NSE's Reply Brief at 8 n.3.

NSE's argument is meritless. The PRD Ordinance must be interpreted as a whole, and thus the modifications or changes permitted under §§ 402.4(H)(6) and (H)(7) must be read in the context of the procedures set forth for approval of a final plan. Specifically, § 408.3 provides that the Board *may* refuse to approve the final plan if it "contains variations from the approved Tentative Plan." This language of the PRD Ordinance is nearly identical to the language of the corresponding provision of the MPC.[6] See 53 P.S. § 10711(c) ("In the event the development plan as submitted contains variations from the development plan given tentative approval, the approving body *may* refuse to grant final approval … .") (emphasis added). The use of the permissive "may" in § 10711(c) of the MPC demonstrates the General Assembly's intention to grant discretion to local authorities in assessing whether "variations" from an

---

[6] As the Commonwealth Court recognized, while the provisions of the MPC take precedence over and invalidate, to the extent of any inconsistency, all local zoning enactments, see, e.g., Cohen v. Ford, 339 A.2d 175, 178 (Pa.Cmwlth. 1975) (citing 53 P.S. § 10103), the language of an ordinance need not be identical to that of the MPC. See NSE v. Zoning Board, 38 A.3d at 1028 (citing Boyd v. Zoning Hearing Board of Churchill Borough, 476 A.2d 499, 501-02 (Pa.Cmwlth. 1984)). Non-substantive differences between a municipal ordinance and its enabling legislation do not render the ordinance invalid; "it is enough that the language [of the ordinance], when applied, creates no conflict with the provisions mandated by the [MPC]." Boyd, supra at 502.

approved tentative plan should warrant refusal to grant approval of a final plan.[7]  We also note that in determining whether to refuse final approval of a PRD plan, the local authorities must be guided by "the public interest" under both the MPC, see 53 P.S. § 10711(c), and the PRD Ordinance, see § 408.3.

Placement of such discretion with local authorities is consistent with "a prime objective" of Article VII of the MPC, to wit, "flexibility of development."  53 P.S. § 10705 (e)(3); see also § 10701 (stating that "increased flexibility of regulations over land development [is] authorized [in Article VII]" and requiring "administrative standards and procedures as shall encourage the disposition of proposals for land development without undue delay").  Article VII recognizes that development of a PRD may take place over a period of years, see § 10705(c) and (e), and explicitly provides for consideration to be given to conditions "at the time of development."  See 53 P.S. § 10701 ("... in aid of these purposes [of Article VII], to provide a procedure which can relate the type, design and layout of residential and nonresidential development to the particular site and the particular demand for housing existing at the time of development"); § 10705(i) (stating that all standards developed pursuant to Article VII "shall not unreasonably restrict the ability of the landowner to relate his development plan to the particular site and to the particular demand for housing existing at the time of development"); § 10705(e)(3) (stating that the precise location of common open space can be deferred until the filing of an application for final approval "so that flexibility of development which is a prime objective of this article, can be maintained").  Thus, the provisions of the MPC, Article VII, anticipate an accommodation of modifications in the development plan as the approval process and physical development proceed.  The

---

[7]  We stress that NSE has made explicitly clear that it is not challenging the constitutionality of any provision of the MPC.  NSE's Reply Brief at 4.

PRD Ordinance merely reflects the flexibility inherent in the MPC, Article VII. NSE's claims to the contrary have no merit.[8]

## II. Newtown Square East, L.P. v. Township of Newtown

In the third and final issue before this Court, NSE claims that the Commonwealth Court erred in holding that BPG's Tentative Plan complies with the PRD Ordinance and the MPC because the Tentative Plan allegedly fails to identify the use of proposed buildings. NSE asserts that the Tentative Plan should not have been approved, and asks this Court to reverse the Commonwealth Court's decision and hold that the

---

[8] NSE also asserts that the PRD Ordinance, by allegedly allowing uses to "float" between the tentative plan approval and final plan approval stages, is contrary to this Court's opinion in Eves v. Zoning Board of Adjustment, 164 A.2d 7 (Pa. 1960). NSE's Brief at 33-34; NSE's Reply Brief at 8 n.3. In Eves, this Court held to be invalid a method of zoning referred to as "flexible selective zoning," under which the zoning of tracts of land as F-1, for light industrial uses, was decided on a case-by-case basis, upon solicitation by individual landowners seeking to have their properties rezoned as such. We held that such a method was "manifestly the antithesis of zoning in accordance with a comprehensive plan." Id. at 11 (internal quotation marks omitted); see also Cheney v. Village 2 at New Hope, Inc., 241 A.2d 81, 85 (Pa. 1968) ("In Eves, it was almost impossible for the F-1 districts to conform to a comprehensive plan since tracts would be re-zoned on a strictly *ad hoc* basis.").

As the Commonwealth Court has held, the "flexible selective zoning" disapproved in Eves is distinct from a PRD as delineated in the MPC, Article VII. Doran Investments v. Muhlenberg Township, 309 A.2d 450, 453 n.1 (Pa.Cmwlth. 1973) ("The practice of case by case consideration condemned in Eves is overcome by the requirement [in Article VII] that detailed development standards appear in the [PRD] ordinance and by assuming that compliance with those standards would lead to approval subject to the additional feature, not usually present in conventional zoning, that the local planners may attach conditions conducive to the public interest."). Furthermore, in Cheney, supra, a case decided by this Court prior to the enactment of Article VII of the MPC, we concluded that Eves's bar to spot zoning did not preclude the establishment by local ordinance of a Planned Unit Development, a density or cluster concept of zoning analogous to a PRD. Accordingly, NSE's assertion that the PRD Ordinance is contrary to Eves's holding has no merit.

Tentative Plan is invalid. The focus of NSE's claim is the following table from the Township Board's written approval of BPG's Tentative Plan:

> 1. The Tentative PRD Plan is approved with the maximum density and intensity of use as outlined below:
>
> Sector 1. In addition to the existing buildings, there shall be no more than:

| | |
|---|---|
| A. Commercial/retail/restaurant | 464,560 square feet |
| B. Office | 136,415 square feet |
| C. Residential | 310 units which shall contain no more than 480,000 square feet of floor area |
| D. Hotel | 120,000 square feet |

> E. Up to an additional 100,000 square feet of flexible space that may be devoted to office and/or hotel use.

In Re: Application of BPG Real Estate Investors -- Straw Party -- 1, L.P. *et al* for Approval of Tentative PRD Plan Before the Board of Supervisors of Newtown Township, Findings of Fact, Conclusions of Law and Decision, dated 12/3/09, at 11; see also id. at 6 ¶ 16 (indicating that the information in the table above reflects BPG's proposal for development of Sector 1 of the PRD tract).

NSE argues that neither the PRD Ordinance nor the MPC permits the designation of up to 464,560 square feet for "commercial/retail/restaurant" use, or up to 100,000 square feet as "flexible space" for some combination of "office and/or hotel use." NSE's Brief at 36-37. In NSE's view, such "open-ended" designations improperly grant the developer the choice of multiple possible uses and allow "virtually unlimited change" between the tentative and final plan stages, thereby rendering BPG's Tentative

Plan invalid. Id. In addition, NSE argues that the term "commercial" is not a valid use designation because it does not "provide the requisite meaningful information about the specific use proposed." Id. at 37.

In upholding the Township Board's approval of BPG's Tentative Plan, the Commonwealth Court relied on its determination that the use designation provisions of the PRD Ordinance are consistent with the MPC, Article VII. Newtown Square East, L.P. v. Township of Newtown, 38 A.3d at 1014-15 & n.8 (citing Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 38 A.3d at 1018). In addition, the court noted that NSE had not raised before the Township Board a claim that "commercial" was an improper and invalid use designation. Id. at 1015 n.9. However, despite concluding that NSE had waived its claim as to the term "commercial," the Commonwealth Court nonetheless addressed and rejected the claim on the merits, concluding as follows: "[W]e have no difficulty concluding that, when read together, the provisions of the PRD Ordinance permit the identification of uses by the categorical designation 'commercial' with the understanding that the approval the Board renders under such circumstances is limited to uses permitted as of right." Id. at 1016.

In agreement with the Commonwealth Court, our review of the record indicates that NSE indeed did not claim before the Township Board that "commercial" is an invalid use designation under the PRD Ordinance and the MPC, Article VII. NSE's own expert land planner witness, Thomas J. Comitta, testified on cross-examination during the hearing before the Township Board that "commercial" *is* a permitted use under the PRD Ordinance, as revealed in the following excerpt from the notes of testimony.

BPG Counsel: Okay. So, now, you heard [witness Dennis Glackin's][9] testimony. He said that this [tentative] plan shows and designates commercial uses, office uses and residential uses, correct?
Witness: And others, but yes. He said all those.

BPG Counsel: And hotel?
Witness: Yes.

BPG Counsel: Okay. Is a residential use permitted under the Ordinance?
Witness: Yes.

BPG Counsel: *Is a commercial use permitted under the Ordinance?*
Witness: *Yes.*

BPG Counsel: Is a hotel use permitted under the Ordinance?
Witness: Yes.

BPG Counsel: And is an office use permitted under the Ordinance?
Witness: Yes.

BPG Counsel: So, the statement that [witness Dennis Glackin] made that we have designated the uses that will be on the plan are all permitted uses?
Witness: That's correct.

Notes of Testimony ("N.T."), Hearing before the Township Board concerning the Application for BPG Towne Center - Tentative Plan, 10/7/09, at 107-08 (footnote and emphasis added).

---

[9] Dennis Glackin is a land planner who worked with BPG to prepare the Tentative Plan. See Notes of Testimony ("N.T."), Hearing before the Township Board concerning the Application for BPG Towne Center - Tentative Plan, 9/14/09, at 23; id. at 22-44 (direct examination); id., 10/7/09, at 9-72 (cross- and redirect examinations).

Because NSE never raised before the Township Board a claim that "commercial" was an invalid use designation, which was not enumerated, defined, or permitted under the PRD Ordinance, this claim has been waived.

The essence of NSE's remaining claim is that neither the PRD Ordinance nor the MPC, Article VII, permit a developer to satisfy the use designation requirement by indicating several possible categories of permitted use for a proposed building at the tentative plan stage. Rather, in NSE's view, a developer must designate a *single* category of permitted use for each building at the tentative plan stage.[10] See NSE's Brief at 37 ("The MPC entitles affected parties to know [at the tentative plan stage], for example, whether a developer proposes a retail shop, a movie theater, a bank, an indoor amusement park, a hotel, a conference center, and so forth.").[11] NSE's sole argument for this position is that such specific designation of use for each proposed building is required to "comport with the MPC's procedural due process protections" of adequate notice and a meaningful opportunity to be heard at a public hearing. NSE's Brief at 36.

We cannot agree. NSE cites no prevailing law to support its interpretation of procedural due process guarantees in the context of a challenge to a plan submitted pursuant to a PRD ordinance or any other type of zoning ordinance. We fail to see how NSE's due process rights are implicated by BPG's tentative plan designation of several possible uses permitted as of right for buildings proposed on its own property.

---

[10] NSE acknowledges that identification of a particular tenant is not required in a tentative plan. NSE's Brief at 31, 36; NSE's Reply Brief at 3.

[11] NSE does not seem to entertain the possibility that a single building could very well encompass several permitted uses, such as a hotel with a restaurant, retail shops, personal service establishments, and a bank.

As this Court has repeatedly recognized, "Article I, Section 1 of the Pennsylvania Constitution protects the citizen's right to the enjoyment of private property, and governmental interference with this right is circumscribed by the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution." Township of Exeter v. Zoning Hearing Board of Exeter Township, 962 A.2d 653, 659 (Pa. 2009) (citation omitted). Of course, this property right may be reasonably limited by zoning ordinances enacted pursuant to a municipality's police power. Id.; In re Appeal of Realen Valley Forge Greenes Associates, 838 A.2d 719, 727-28 (Pa. 2003). However, because restrictions imposed by zoning ordinances are in derogation of a landowner's property rights, they must be strictly construed. See, e.g., Cleaver v. Board of Adjustment of Tredyffrin Township, 200 A.2d 408, 412 (Pa. 1964); Philadelphia Art Alliance v. Zoning Board of Adjustment of City of Philadelphia, 104 A.2d 492, 494 (Pa. 1954); Appeal of Lord, 81 A.2d 533, 535 (Pa. 1951); Hess v. Warwick Township Zoning Hearing Board, 977 A.2d 1216, 1221 (Pa.Cmwlth. 2009) (reiterating that "generally a zoning ordinance should be construed in a manner that does not, by mere implication, fetter a landowner's reasonable use of his land"); Aldridge v. Jackson Township, 983 A.2d 247, 253 (Pa.Cmwlth. 2009) (citing Appeal of Gilden, 178 A.2d 562, 566 (Pa. 1962) for the proposition that "restrictions on a property owner's right to free use of his property must be strictly construed and all doubts resolved in his favor").[12] Here, nothing in the PRD Ordinance or the MPC, Article VII, would suggest that a landowner cannot designate several potential uses permitted as of right for a proposed building at the tentative plan stage, and we will not read such a restriction into either text.

_____

[12] See also 53 P.S. § 10603.1, which provides that, in interpreting a zoning ordinance where doubt exists as to the intended extent of a restriction upon the use of property, the language is to be interpreted in favor of the property owner and against any implied extension of the restriction.

Furthermore, as we have discussed, supra, a prime objective of Article VII of the MPC is flexibility of development, and Article VII authorizes increased flexibility of regulations over land development. See text, supra (citing 53 P.S. §§ 10705(e)(3) and 10701). With respect to an application for tentative approval of a PRD, Article VII seeks "to provide an expeditious method for processing a development plan … and to avoid the delay and uncertainty which would arise if it were necessary to secure approval, by a multiplicity of local procedures, of a plat of subdivision." 53 P.S. § 10707. NSE's interpretation of the procedural due process guarantees applicable to the PRD process would presumably necessitate a new public hearing every time a landowner/developer of a PRD sought to change, at least at the tentative plan stage, the designated use of a proposed building from one use permitted as of right to a different use permitted as of right. Such a cumbersome procedure is incompatible with, and indeed is the antithesis of, the MPC, Article VII's emphasis on increased flexibility with respect to land development and regulations thereof.

BPG stresses that NSE's position "would require developers to have contracts for sale or leases in place before seeking tentative approval. Absent a contract or lease, no developer could have confidence that a particular building would be an office, movie theater, restaurant, convenience store, personal service establishment, or other specific use." BPG's Brief at 26. As the Commonwealth Court concluded, requiring contracts at this early stage of development is inconsistent with "the practical reality involved in non-residential uses -- that they may change during the course of the approval process and even thereafter" due to factors beyond the control of a landowner/developer. Newtown Square East, L.P. v. Zoning Hearing Board of Newtown Township, 38 A.3d at 1025,

1027. We agree with BPG and the Commonwealth Court that the flexibility of the MPC, Article VII, was intended to address, *inter alia*, these practical realities.[13]

NSE's restrictive interpretation of the procedural due process guarantees mandated by the MPC, Article VII, and the PRD Ordinance have no basis in the text of the enactments, our decisional law, or the policy of flexibility inherent in a PRD. There is no merit to NSE's final claim.

Orders affirmed.

Mr. Chief Justice Castille and Messrs. Justice Baer and Stevens join the opinion.

Mr. Justice Eakin files a dissenting opinion in which Mr. Justice Saylor and Madame Justice Todd join.

---

[13] Amici have expanded on this general rebuttal to NSE's argument as follows:

> [D]etermining the single, specific use of each building or structure in a development typically requires an "immense" amount of preparation, negotiation with potential tenants, and coordination to achieve a balance that meets the aesthetic, social, and economic needs of a particular community. That type of preparation, negotiation, and coordination is time-consuming and expensive and always involves many variables and contingencies.
>
> And, when development is to occur over an extended period of time (as is often the case with planned residential developments), developers usually must make adjustments to the balance of residential and nonresidential uses of buildings to account for changes in demand, financing, and other economic conditions, as well as land development technology and practices. Practically speaking, therefore, it is not feasible for a developer to lock down a single, specific use for each building and structure before seeking tentative approval of a planned residential development.

Brief of Amici Curiae O'Neill Properties Group, LP, The Brickstone Companies, Korman Communities, and the Philadelphia Real Estate Council at 21-22.